## Dean Thompson v. Green Mountain Power Corp.

[144 A2d 786]

May Term, 1958

Opinion Filed September 2, 1958.

*Arthur L. Graves* for the defendant.

*John Morale* and *John A. Swainbank* for the plaintiff.

**Holden, J.** The defendant, Green Mountain Power Corporation, appeals a judgment which has imposed liability for the negligent use of explosives. The defendant assigns error to the failure of the trial court to grant its motions for a directed verdict and to set the verdict aside. The defedant's brief confines both motions to the same questions of law.

The defendant exploded dynamite on property adjacent to the plaintiff's home premises where he maintained a flock of three hundred laying hens. Hens are physically vulnerable to damage by fright from sudden and excessive noise. As a result of the noise produced by the explosion, the poultry suffered from shock and fright. Two hens were smothered as the flock huddled in a corner of the hen house.

The remainder lost weight, went into premature moult, and daily egg production declined from two hundred fifty to fifty and the plaintiff was forced to sell the hens at a substantial loss. There was a conflict in the evidence concerning the physical results of the fright upon laying hens and their egg production. The point, though referred to in the defendant's brief, is not for consideration. It is sufficient to say there was substantial evidence to support the plaintiff's claim of damage. Modifying evidence to the contrary is excluded in testing the merits of the motion for directed verdict. *Griswold* v. *Metropolitan Life Ins. Co.*, 107 Vt 367, 369-370, 180 A 649.

The accident occurred while the defendant was engaged in the construction of a power transmission line in the town of South Ryegate. The blasting was done to excavate for two pole settings designated as No. 25 and 26. Pole No. 25 was located in clay soil at a distance of approximately 100 feet from the plaintiff's poultry house. Although a blast was exploded at this location, the defendant experienced no great difficulty in accomplishing the required excavation. Pole No. 26 was located in rock ledge at a distance of 257 feet from the shed where the plaintiff's hens were kept. The nearest point of the plaintiff's dwelling to Pole 26 was 266 feet. From a shed attached to the dwelling the distance to this pole site was 190 feet. The Wells River intervenes the space between the power line on the north and the plaintiff's premises to the south. The plaintiff's home and adjacent buildings are situated on the north side of a highway designated US Route 302. The photographic exhibits received in evidence show the plaintiff's buildings to be in clear view from Pole 26.

The blasting operations were directed by the defendant's foreman who had forty-four years of experience in the use of explosives. On September 30, 1955 the defendant's workmen drilled three holes, two feet apart and six feet in depth in the rock ledge at No. 26. A charge of three sticks of dynamite was placed in each hole. The charge was matted by brush and pine trees.

Before detonating the charge, the defendant's employees made no inquiry at the plaintiff's premises concerning the property that might be located in the buildings. The defend-

ant's foreman testified he "presumed" there was someone present at the Thompson property at the time of the blasting. The plaintiff's wife was at home at the time, yet no warning was given her of the impending explosion. The defendant's workmen were alerted by three shouts spaced at half minute intervals before each explosion was set off. The charge was fired electrically from a distance of 125 feet from the excavation.

When the first charge was exploded, two witnesses who were in a home about a third of a mile from the Thompson place, were frightened by the explosion and hurried in excitement to the Thompson home to learn what had happened. They found the plaintiff's wife in the dooryard. They heard the hens making considerable racket in the hen house, and could hear them batting their wings against the sides of the building. Mrs. Thompson was not available as a witness, having deceased prior to the time of the trial.

While these witnesses were at the plaintiff's home, a lighter charge was fired. Rock debris was hurled into the dooryard and the witnesses took refuge in the house. After a third and similar charge failed to accomplish the required excavation, blasting operations were suspended over the weekend to October 3. During the interim the plaintiff unsuccessfully sought to communicate with the defendant through its local representative. The blasting was completed on October 3.

The defendant's foreman testified that at the time the successive charges were fired, he did not know there were laying hens in the buildings on the plaintiff's property. Nor did he know that poultry could be injuriously affected by fright. He was aware that the explosion of dynamite is capable of producing excessive noise, some concussion and vibration of the ground.

The poultry were housed in a substantial structure that was covered by a steel roof. At the time of the explosion, the windows were open, no glass was broken, nor was there any visible damage to the building, although some hundred pieces of rock debris from the excavation were picked up about the yard.

There was no expert evidence that the charges were negligently loaded or covered. The principal claim of negligence

rests on plaintiff's charge that the defendant failed to notify and warn him of the impending explosion that he might protect his property from the damaging effect that ensued. The evidence supports the plaintiff's contention that there were certain protective measures that were available to the plaintiff to safeguard the poultry from harm by the explosion had he received adequate and timely warning.

With special care, the hens could have been removed from the range of damaging sound and other disturbance produced by the explosion. The windows of the shed could have been closed, although the defendant developed the point that this precaution might have produced additional damage from intensified concussion and flying glass. The severity of the fright might have been reduced by feeding at the time of the explosion or by introducing noises familiar to the poultry to counteract the noise of the explosion.

The defendant challenges the plaintiff's right to a recovery on these facts on three basic contentions. First, liability is disclaimed because the defendant need not have anticipated injury to the plaintiff's hens due to fright alone, since that was not a consequence which, in the ordinary course of things, naturally followed the defendant's acts.

■ That high explosives have great utility in meeting the construction needs of modern society is not open to question. Modern safety techniques developed in a proper observance of human and legal considerations have reduced the incidence of harmful misadventure to relatively few occasions for legal redress. Yet the law preserves dynamite in the category of highly dangerous agencies and demands of its use the highest degree of care and caution. *Tinney* v. *Crosby*, 112 Vt 95, 104, 22 A2d 145; *Goupiel* v. *Grand Trunk Railway Co.*, 94 Vt 337, 342, 111 A 346.

■ The doctrine of absolute liability has not been accepted in this jurisdiction. See *Goupiel* v. *Grand Trunk Railway Co.*, *supra*, 94 Vt at 343, 111 A at 348. Notwithstanding, this Court has judicially recognized that those who deal with a deadly agency should be held accountable to all whose likelihood of injury could reasonably be foreseen, even unto tres-

passers. *Humphrey* v. *Twin State Gas & Electric Co.*, 100 Vt 414, 422, 139 A 440, 56 ALR 1011.

■ Foresight of harm lies at the foundation of negligence. Knowledge of danger on the part of the actor is vital to the creation of the duty to exercise care in any given situation where injury to the person or property of others is at stake. 2 Street, Foundations of Legal Liability, p. 97; 2 Harper & James, The Law of Torts, §16.5, pp. 907 et seq.; 65 CJS, Negligence, §5, pp. 350 et seq.; 28 Am Jur, Negligence, §23, p. 665. See also, Pollock, The Law of Torts, 13th Ed. 1929— Inevitable Accident, pp. 140-149. And the opportunity for knowledge, when available by the exercise of reasonable care, is the equivalent of knowledge itself. *Green* v. *Atlantic Charlotte Air Line Rwy.*, 131 SC 124, 126 SE 441, 38 ALR 1448, 1452. Knowledge essential to the invocation of legal duty need not be actual; it may be implied, imputed and constructed from the circumstances. *Humphrey* v. *Twin State Gas & Electric Co., supra*, 422; *Stedman* v. *O' Neil*, 82 Conn 199, 72 A 923, 926, 22 LRANS 1229. Knowledge of the true facts may be essential to careful conduct, and where knowledge is required, voluntary ignorance is culpable and affords no protection from legal liability. *Gobrecht* v. *Beckwith*, 82 NH 415, 135 A 20, 52 ALR 858, 861.

■■ Blasting is ultrahazardous because it requires the use of high explosives. It is impossible to predict with certainty the effect of its consequences. Restatement, Torts, §502, Comment c. The defendant, about to release an explosive force, whose pattern of destruction could not be accurately foretold, was under the duty to investigate adjacent property where the force might be spent. A survey of the area within range of the blast presented the dwelling and outbuildings of the plaintiff at a distance of less than a hundred paces from the excavation site. There was ample time for inquiry and investigation, for the timing was under the control of the defendant. The explosion itself was not accidental; only the final result was unforeseen. In this situation the range of vision and apprehension to the prudent eye is substantially enlarged from the predicament where an instrument, outwardly innocent

and harmless, exploded without warning. See *Palsgraf* v. *Long Island Railroad Co.*, 248 NY 339, 162 NE 99, 100, 59 ALR 1253, 1256; *Parrott* v. *Wells, Fargo & Co.*, 15 Wall. 524, 21 L Ed 206, 211.

Here the general danger to the plaintiff's property was apparent. The particular hazard could have been discovered on short inquiry and investigation. The defendant's inability to foresee the danger that damage of some kind might ensue from its action came from a lack of diligence. The defendant's employees elected to remain ignorant of facts readily ascertainable. The defendant is not now at liberty to claim immunity for want of foresight obscured by their own neglect. Indifference to the consequences of blasting is the opposite of due care. *Albison* v. *Robbins & White, Inc.*, 151 Me 114, 116 A2d 608, 613. It was for the jury to say whether inquiry was required and whether its omission was commensurate with the high degree of care the law imposed.

The defendant when about to fire a dangerous explosive was required to give adequate and timely warning to persons and property who might be within the range of its blast. *Tinney* v. *Crosby*, *supra*, 112 Vt. at 104, 22 A2d at 149; *Cole* v. *North Danville Co-op. Creamery Association*, 103 Vt 32, 39-40, 151 A 568. See also 35 CJS, Explosives, §8, d (2), p. 241; 22 Am Jur, Explosions and Explosives, §50, p. 177; Anno., 35 ALR 1246. The procedure followed by the defendant afforded the plaintiff no opportunity to safeguard his property from whatever danger might attend the explosion. It was for the jury to determine whether this shortage of duty constituted negligence.

On somewhat different facts, considered on a demurrer, *Hieber* v. *Central Kentucky Traction Co.*, 145 Ky 108, 140 SW 54, 36 LRANS 54, held that the defendant, in blasting at a quarry nearby the plaintiff's blacksmith shop was under no legal duty to warn the blacksmith when it was about to fire a charge of dynamite. The plaintiff was injured when the horse he was shoeing, plunged at the noise from the explosion. Some distinction arises from the fact that the defendant carried on blasting operations at that particular site as a part of its

regular business. A divided court held the plaintiff was under a duty to ascertain for himself the time when such explosions were to occur. Compare, *Louisville & Nashville R. Co.* v. *Smith's Admr.*, 203 Ky 513, 263 SW 29, 35 ALR 1238 at 1242. Insofar as this case relieves one engaged in a dangerous enterprise from the duty to warn those subject to its peril of the impending danger, it is at variance with our law expressed in *Tinney* v. *Crosby, supra,* and *Cole* v. *North Danville Co-op. Creamery Association, supra.*

The second point relied upon by the defendant is that of proximate cause. The defendant contends that the damage to the plaintiff's poultry by fright was not a proximate result of the negligence charged. The claim of error is predicated on the proposition that damage by fright created by noise of the explosion was not a foreseeable consequence of the blasting. It contends that the damage that followed cannot be legally assigned to the blasting.

The defendant is sued for the destruction of the plaintiff's poultry by a force which the defendant alone put into operation. In substance, the defendant replies that the accidental damage would not have happened but for the unforeseen fright of the flock. The evidence supports the view, which the jury confirmed and accepted, that the defendant failed in its legal duty to the plaintiff by firing the blast without warning. And the plaintiff, who had special knowledge of the vulnerability of his poultry to damage by frightening noise, was thereby deprived of the opportunity to remove or otherwise protect his property from the very danger that worked the final mischief.

■ Foreseeable consequences may be significant in the determination of the scope of legal duty and whether a duty or care has been violated. But there is a distinction between foreseeable consequence and proximate cause. This was observed by Justice Powers in *Woodcock's Admr.* v. *Hallock,* 98 Vt 284 at 290, 127 A 380, 382. "It is well established with us that on the question of what is negligence, it is material to consider the consequences that a prudent man might reasonably have anticipated. But when negligence is once established, that consideration is wholly immaterial, on the question of

how far it imposes liability. One shown to have been negligent is liable for all the injurious consequences that flow from his negligence until diverted by the intervention of some efficient cause that makes the injury its own, or until the force set in motion by the negligent act has so far spent itself as to be too small for the law's notice." The principle is recognized in other cases. *Perkins* v. *Vt. Hydro-Electric Corp.*, 106 Vt 367, 381, 177 A 631; *Ide* v. *Boston & Main RR.*, 83 Vt 66, 79-80, 74 A 401; *Gilson* v. *Delaware & Hudson Canal Co.*, 65 Vt 213, 217, 26 A 70. And it has particular application in accidents where the reaction of animals is the connecting link between the final injury and antecedent negligence. *Woodcock's Admr.* v. *Hallock, supra,* at 291; *Isham* v. *Dow's Estate,* 70 Vt 588, 590, 41 A 585, 45 LRA 87; *Stevens* v. *Dudley,* 56 Vt 158, 167.

"It was not necessary that the defendant should have notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye." Holmes, J. in *Munsey* v. *Webb*, 231 US 150 at 156, 34 S Ct 44 at 45, 58 L Ed 162.

In the use of high explosives for excavation, noise, concussion and rock debris are simultaneously intermingled. Each effect has the capacity for damage. The jury were at liberty to determine that the firing of the charge, at a distance of less than 100 yards from the plaintiff's buildings, involved the possibility of danger obvious to the ordinary prudent eye. When it was established to the satisfaction of the jury that the explosion was negligently fired, the question arose, was the plaintiff's property damage a natural sequence of that negligence? Again, the answer was for the jury. And the defendant's antecedent negligence, once established, accompanied the sound waves in force and effect wherever and however that force might be spent. See *Woodcock's Admr.* v. *Hallock supra,* 98 Vt. at 291, 127 A at 382.

The defendant's final challenge to the plaintiff's recovery is asserted on the ground that injury occasioned by fright alone, apart from physical injury, is not actionable. Reliance is placed on *Nichols* v. *Central Vermont Rwy.*, 94 Vt 14, 18, 109 A 905, 12 ALR 333. It is there held that in ordinary

actions for negligence, there can be no recovery for mental suffering where there is no attendant physical injury. The reason for the rule is stated to be based on considerations of policy—that mere mental pain and anxiety are too vague for legal redress when no injury is done to person and property, health or reputation. Recovery here is not sought for fright alone. Nor does the fright induced by the explosion stand separate and apart from physical injury to the poultry; nor from pecuniary damage to the plaintiff. Two hens were killed, and the remainder suffered in physical deterioration to the extent that the weight of the fowl and their egg production were substantially reduced.

The doctrine that damage without physical trauma or impact is not compensable has been often repudiated in both English and American jurisdictions. See *Orlo* v. *Connecticut Co.*, 128 Conn 231, 21 A2d 402, 405; *Chiuchiolo* v. *New England Wholesale Tailors*, 84 NH 329, 150 A 540, 543; 2 Harper & James, The Law of Torts, §18.4, p. 1034. The Supreme Court of New Hampshire observed that if a sudden explosion by its noise makes one deaf, or by its light makes one blind, there may be a recovery. If, instead, the shock should be so frightening as to produce impairment of health, liability should not be denied for reasons of expediency. *Chiuchiolo* v. *New England Wholesale Tailors*, *supra,* 150 A at 543.

The defendant refers us to cases in other jurisdictions which adhere to a contrary rule as to human beings and in consequence forbid recovery for damages to animals occasioned by fright, citing *Lee* v. *Burlington*, 113 Iowa 356, 85 NW 618, and *Chicago, B. & Q. RR Co.* v. *Gelvin*, 238 F 14, LRA 1917C, 983. In these cases the original negligence was proved or conceded but recovery was nevertheless denied on the premise that injury by fright was such an unusual occurrence that the law refuses to consider it to be a proximate result of the negligence. This concept is inconsistent with modern authorities. In the treatment of causation, these holdings are contrary to *Perkins* v. *Vermont Hydro-Electric Co.*, *supra,* 106 Vt at 381, 177 A at 637; *Woodcock's Admr.* v. *Hallock*, *supra,* 98 Vt at 290, 127 A at 382. And at the time of these decisions there was substantial authority to the contrary on the very point of

physical damage to animals by fright.    See *Louisville & Nash-ville RR* v. *Melton*, 158 Ala 509, 47 So 1024, 23 LRANS 183 and accompanying annotation.

*Madsden* v. *East Jordan Irrigation Co.*, 101 Utah 552, 125 P2d 794 involved damage to young mink.    At the noise of an explosion by blasting, the female mink became frightened and ate their young.    No negligence was alleged or proved.    The Utah court pointed out that the plaintiff relied entirely on absolute liability, and under the law of that jurisdiction liability for non-negligent user of explosives reached only the results ordinarily foreseeable from explosion.    It was held that allegation and proof of negligence was essential to establish causation between the explosion and the final damage.    In the absence of such allegation and proof, recovery was denied.

Similarly, in *Nova Mink Ltd.* v. *Trans-Canadian Airlines*, (1951) 2 DLR 241, recovery was denied for failure of proof of negligence; not because the damage was caused by fright apart from impact.    The mink ranch was concealed from view of the pilot and he did not have the opportunity, in time or space, to discover its location while in flight.

Injury to animals by fright induced by noise was held actionable in *Maitland* v. *Twin City Aviation Corp.*, 254 Wis 541, 549, 37 NW2d 74 and *MacGibbon* v. *Robinson*, (1953) 2 DLR 689, 692.    In the latter case some of the plaintiff's young mink were destroyed in panic induced by noise from explosions on the defendant's adjacent property.    The defendant undertook to clear two stumps by blasting.    The stumps were located about 300 yards from the plaintiff's pens. The defendant used three sticks of dynamite at each stump. The court resolved liability in favor of a recovery, holding the plaintiff, as a neighbor of the defendant, was so situated  that the defendant should have had the plaintiff's injury in mind when he undertook the  blasting operation.

In the MacGibbon case the defendant knew that mink were particularly susceptible to such damage during the whelping season.    In the present case, the defendant's foreman denied such knowledge.    Yet he was dealing with an agency, dangerous in law and fact, and as pointed out earlier in the opinion, the opportunity for full knowledge was at hand.

That opportunity was ignored and neglected, and the defendant elected to fire the blasts without warning to the plaintiff.

 Upon the facts and circumstances of the instant case, the cause was properly submitted to the jury for decision. And we cannot say, as a matter of law, against the verdict of the jury, that this accident was unavoidable as to the defendant had it exercised the high degree of care that the law demanded. The defendant's motion for a directed verdict and its motion to set aside the verdict were properly denied.

*Judgment affirmed.*