# Lyse A. Savard, b.n.f. Ludger Savard v. Cody Chevrolet, Inc.

[ 234 A.2d 656 ]

April Term, 1967

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed June 6, 1967

Motion for Reargument Denied October 3, 1967

406

*Davis, Martin & Free* for plaintiff.

*Theriault & Joslin,* with *John A. Burgess* on the brief, for defendant.

**Smith, J.** The action is in tort. The appeal here was taken by the defendant after verdict and judgment for the plaintiff in the trial below in the Washington County Court. The defendant has presented four questions for our determination in its brief and argument.

The most important question presented to us by the defendant arises because of the denial by the trial court of its motion that the jury be directed to return a defendant's verdict, and that the testimony of Dr. Forrest, a psychiatrist, as to emotional and psychological injuries suffered by the plaintiff, be struck from the case.

The undisputed evidence is that a dump truck, owned by the defendant and driven by its agent, became out of control while travelling down a steep hill in the City of Barre and crashed into a house owned by the parents of the infant plaintiff. The plaintiff, and her parents, were inside the house when it was struck by the truck. The impact of the collision caused severe damage to the house, with consequent loud noise, loss of light, and with a showering of light debris on the person of the plaintiff. However, there was no impact between the truck of the defendant and the plaintiff, nor did she receive any physical injury at the time.

Plaintiff testified that as a result of the accident she suffered a severe nervous shock, emotional distress, sleeplessness and loss of

appetite which resulted in a loss of weight and having to undergo medical treatment and care for a period of some months. Her testimony was corroborated by that of her parents.

Within a few days after the accident, the plaintiff, then 16 years of age, consulted with her family physician, Dr. Ernest Reynolds. He testified that she complained of being excessively nervous, under great emotional distress, troubled by nightmares and sleeplessness, faintness and periods of trembling, as well as loss of appetite and of weight. Dr. Reynolds, after seeing his patient on a few visits, referred her to Dr. P. L. P. Forrest, a psychiatrist.

The plaintiff was treated by Dr. Forrest for approximately two years. It was his testimony that the plaintiff was suffering from a traumatic psychoneurosis, or a severe mental emotional trauma, and that this condition was the result of the severe traumatic experience the plaintiff was subjected to when the truck was in collision with the house.

The defendant contends that the testimony of Dr. Forrest should have been struck from the record, because the emotional damage suffered by the plaintiff was not caused by, or causally related to, physical injury. The defendant urges this Court to rule that a plaintiff may recover for negligently caused emotional disturbance only if: (1) the plaintiff is within the area of foreseeable harm; and (2) the emotional damage results from a physical injury received by the plaintiff. Defendant cites the case of *Nichols* v. *Central Vermont Rwy.*, 94 Vt. 14, 109 Atl. 905, as authority for this position.

In the *Nichols* case, the action was brought by a mother seeking damages for mental distress by reason of her shock at viewing the spectacle of her child's coffin about to be run over by a railroad train. It is distinguishable from the case at hand in that her mental distress was not caused as a result of any apprehension for her own safety as a result of negligence of another, as is the evidence in the case before us, but by fear of damage to the body of her child. Plaintiff in that case was not within any area of foreseeable harm to herself, as was the plaintiff here. In the case of *Thompson* v. *Green Mountain Power Corp.*, 120 Vt. 478, 144 A.2d 786, we held that physical injury caused to poultry by fright alone, resulting from an explosion, negligently created by the defendant, was compensible. In *Thompson,* this Court repudiated the doctrine that damage without physical contact is not

compensible. It was not directly faced with the question here presented of whether recovery may be had for emotional damages received by a person as a result of fright caused by the negligent act of another, but without accompanying physical injury.

However, Holden, J. (now Chief Justice), made the following statement:

> "The doctrine that damage without physical trauma or impact is not compensible has often been repudiated in both English and American jurisdictions. See *Orlo* v. *Connecticut Co.*, 128 Conn. 231, 21 A.2nd 402, 405; *Chiuchiolo* v. *New England Wholesale Tailor*, 84 N.H. 329, 150 A. 540, 543; 2 Harper & James, The Law of Torts, Sec. 18.4, p. 1034. The Supreme Court of New Hampshire observed that if a sudden explosion by its noise makes one deaf, or by its light makes one blind, there may be a recovery. If, instead the shock should be so frightening as to produce impairment of health, liability should not be denied for reasons of expediency."

The thrust of the defendant's contentions here is that liability should be denied against this defendant because there was no bodily injury received by the plaintiff from the negligent act of the defendant. But in *Thompson* it was "impairment of health" which this Court stated would impose liability and not bodily injury alone.

In *Bowman* v. *Williams*, 165 Atl. 182, 184, the Maryland Court of Appeals held that a plaintiff could sustain an action for damages for nervous shock or injury caused without physical impact, by fright arising directly from defendant's negligent act or omission resulting in some clearly apparent and substantial physical injury as manifested by an external condition or by symptoms clearly indicative of a resultant pathological, physiological or mental state.

The reasoning of the defendant is, if we understand it correctly, that if the plaintiff before us had sustained a cut, bruise or other injury of a traumatic nature from the debris with which she was showered when the truck of the defendant impacted with the house in which she was situated, she would be able to sustain her action for damages for her emotional sufferings. The defendant agrees that the plaintiff need not show physical impact to bring an action for damages, but must show that the emotional damage followed some physical in-

jury. Mental or emotional suffering are too vague and uncertain of proof to be an element of damage in the absence of physical injury, says the defendant.

"From the viewpoint of analogy, allowance for mental pain, and for injury to mind and nerve as well as body, is given as items of damage in all cases of liability for personal injury where there is impact. It would seem practically as easy to pretend them and as difficult to disprove them in such cases as in cases where there is no impact and fright is the intervening agency of transmittal. When neuresthenia is claimed as a result of a bodily injury, the connection between the injury and the disease and the extent and severity of the disease are not less uncertain and subject to objective tests than when fright takes the place of bodily impact." *Chiuchiolo* v. *New England Wholesale Tailors, supra,* p. 543.

The Supreme Court of Errors of Connecticut, in *Orlo* v. *Connecticut Co.*, 128 Conn. 231, 21 A.2d 402, had for consideration the question whether a plaintiff could recover for fright and shock caused by the negligence of a defendant where there was an absence of injury of a traumatic nature. The trial court had instructed the jury that there could be no recovery of damages due to fright alone unaccompanied by physical injury. Holding this part of the charge to have been in error, this statement appears in the opinion:

"It is, then, well within the logic of the law that where results which are regarded as proper elements of recovery as a consequence of physical injury are caused by fright or nervous shock due to negligence, recovery should be permitted. Undoubtedly, one, if not the principal, reason why recovery has been denied in cases of this nature is the feeling that fright and similar emotional disturbances are subjective states of the mind, difficult properly to evaluate and of such a nature that proof by the party claiming the injury is too easy and disproof by the party sought to be charged is too difficult, to make it safe as a matter of policy for the law to deal with them, and that, therefore, to permit recovery in such cases would permit a wide field for fictitious claims with which the law cannot satisfactorily deal.

The refusal to allow a recovery in such a case is not rested on a 'logical deduction from the general principles of liability in tort, but (is) a limitation of those principles on purely practical

grounds.' The real basis for the requirement that there shall be a contemporaneous bodily injury or battery is that this guarantees the reality of the damage claimed. But that reality may be proved no less by injuries subsequent to the occurrence of the claimed negligent conduct. There is hardly more risk to the accomplishment of justice because of disparities in possibilities of proof in such situations than in those where mental suffering is allowed as an element of damage following a physical injury or recovery is permitted for the results of nervous shock provided there be some contemporaneous slight battery of physical injury." (Citations omitted.)

The conclusion of the Connecticut court was that "where it is proven that negligence proximately caused fright or shock to one who is within the range of ordinary physical danger from that negligence, and this in turn produced injuries such as would be elements of damage had a bodily injury been suffered, the injured party is entitled to recover."

Also see *Bowman* v. *Williams, supra; Robb* v. *Pennsylvania Railroad Company*, 210 Atl. 709; *Falzone* v. *Busch*, 214 A. 2d 12 and *Strazza* v. *McKittrick*, 156 A.2d 149.

In the *Strazza* case, last cited, the factual situation was almost identical with the one here presented. The plaintiff brought an action for damages for fright and nervous shock resulting when a truck struck the rear porch of the house in which the plaintiff was situated, and she suffered no consequential physical injury, although she did suffer a fright or shock which was caused by fear of injury to herself. The Connecticut court held: "For harm of this nature she is entitled to recover damages, although it does not appear that she sought or obtained medical attention because of it." *Strazza* v. *McKittrick, supra*, p. 152.

■■ Our conclusion is that where negligence causes fright from a reasonable fear of immediate personal injury, and such fright is adequately demonstrated to have resulted in substantial bodily injury or sickness, the injured person may recover if such injury or sickness would be proper elements of damage if they had resulted as a consequence of direct physical injury rather than fright. This is the more modern rule now followed in most jurisdictions, and we adopt it here.

It follows that the testimony of the psychiatrist, Dr. Forrest, was

properly admitted in the case below on the extent of the pathological, physiological or mental state suffered by the plaintiff as a result of her fright. See *Bowman* v. *Williams, supra.* No error is found in the lower court's refusal to grant the motion of the defendant to strike such evidence.

We now consider the objection of the defendant to the action of the lower court in granting the motion of the plaintiff for a directed verdict on liability in her favor, and the refusal of the court to grant defendant's motion for a verdict to be directed in its favor.

■ In our consideration of defendant's exception to the granting of the motion for a directed verdict on liability, we must consider the evidence in the light most favorable to the defendant, the opposing party. *Goodrich* v. *Lash,* 121 Vt. 15, 18, 146 A.2d 169.

The truck which collided with the house of the plaintiff, was owned by the defendant, Cody Chevrolet Company, Inc., but was on loan to the Town of Barre. While the truck was being operated by a town employee in the early afternoon of the day of the accident, the brakes failed. The town employee took the truck to the town garage where the town mechanic telephoned some unknown person at the garage of the defendant to the effect that the brakes on the truck were not working.

At about 4:40 P.M. on the same day, one Albert Smith, the foreman for the defendant, went to the town garage to get the truck. Although Smith denied that he had prior information that the brakes on the truck had failed, he was informed of this fact upon arrival at the garage. He proceeded to try the brakes on the truck and found that they were working improperly, apparently, because of a shortage of brake fluid in the cylinder.

Nevertheless, he started out to drive the truck back to the Cody Garage, apparently believing he could control the progress of the truck through various shifting of the gears. In attempting to bring the truck down the very steep hill at the base of which was the house occupied by the plaintiff, Smith's efforts to control the speed of the truck by gear shifting failed when the drive shaft flew out of the truck. The result was the impact of truck and house upon which this action for negligence is founded.

■■ There is no dispute but that the agent of the defendant was aware, either from information given him by others, or by virtue of his

own experimentation, or both, that the truck which he attempted to return to the garage of the defendant, had defective brakes. The conduct of the defendant, by its agent, in driving the truck upon the public highway, and descending a steep hill, while knowingly operating the vehicle with defective brakes, was not that of a prudent man under the circumstances. *Sulham* v. *Bernasconi,* 106 Vt. 192, 198, 170 Atl. 913. His undertaking to operate the motor vehicle on the public highway, knowing that the brakes on the vehicle were inadequate and unsafe, created a presumption of negligence which was never overcome. Under this state of the evidence, the action of the trial court in directing a verdict for the plaintiff on the question of liability was correct.

The remaining two questions presented to us by the defendant have to do with the matter of damages. The lower court, over the objections of the defendant, allowed the infant plaintiff to introduce the medical bills for her care, and also, instructed the jury that such medical bills "were an element of compensation in the case."

■■ The plaintiff in the cause now before us was an infant. As pointed out in *Trapeni* v. *Walker,* 120 Vt. 510, 516, 144 A.2d 831.

"When a minor child is injured by the negligent act of a third party, two causes of action immediately spring into existence : first, the right of action by the child itself for the personal injuries inflicted upon it ; and second, a right of action to the parent for consequential damages, such as loss of services and expenses, caused by the injury to the child."

However, an infant plaintiff is not precluded from recovering his medical expenses if he establishes that he personally became legally obligated to pay them. *Verchereau* v. *Jameson,* 122 Vt. 189, 194, 167 A.2d 521.

■ In the case before us there is no testimony by whom the bill of Dr. Reynolds was paid, and while Dr. Forrest first stated that "she" paid his bill, he later changed it to state that the bill was paid by the family. It not being established that the infant plaintiff became personally obligated to pay these medical bills for the care of the plaintiff, it follows that the lower court was in error in allowing the medical bills to be introduced into evidence, over the objections of the defendant, for the consideration of the jury on the question of plaintiff's damages.

In its final exception, the defendant claims error on the part of the trial court in denying the defendant's motion to set aside the verdict on the ground of excessiveness.

"This is a question concerning which the appellate court on review has no discretion. The only question is whether the trial court abused its discretion. In considering the question we are bound to indulge every reasonable presumption in favor of the ruling below, bearing in mind that the trial court was in a better position to determine the question." *Towle* v. *St. Albans Publishing Co.*, 122 Vt. 134, 142, 165 A.2d 363.

■ The refusal to set aside the verdict does not impose upon us the duty of ascertaining whether the lower court has viewed the evidence in the light most favorable to the verdict. *Grow* v. *Wolcott*, 123 Vt. 490, 495, 194 A.2d 403.

[■ On the record before us, we cannot say that the trial court exercised its discretion on grounds or for reasons clearly untenable, or to an extent clearly unreasonable, which, in this state is the recognized test of abuse of discretion. *Towle* v. *St. Albans Publishing Co., supra*, p. 142.

We now come to the matter of the amount of the verdict and judgment below which the jury determined to be $10,000. Included in this amount, by reason of the wrongful admission into evidence of the medical expenses for the care of the plaintiff, and the submission of the amount of such expenses as a proper element of damages to the jury, is the sum of $832.00, the undisputed medical expenses.

■ It is obvious that with the sum of the medical expenses removed from the $10,000 verdict awarded by the jury, the judgment should have been for $9,168.00. This requires a reversal pro forma but since the record affords the means of correcting it, the case will not be remanded. *Doyle* v. *Polle*, 121 Vt. 335, 340, 157 A.2d 226.

*Judgment reversed pro forma and judgment for the plaintiff to recover $9,168.00, with interest thereon from the date of judgment below, and costs below and here.*