SCALES, J.
Appellant, defendant below, G4S Secure Solutions USA, Inc. (“Wackenhut”) appeals a final judgment rendered after a jury verdict in favor of Appellee, plaintiff below, Taliya Golzar (“Golzar”). Because Florida’s impact rule precludes recovery of damages in tort cases for emotional distress absent any physical injury, we reverse.
I. Facts

A. Wackenhut hires Owens as a security officer

Wackenhut is a private security company providing security services throughout the United States, including Miami-Dade County. In November of 2008, Eric Owens (“Owens”) submitted an employment application for a position as a security guard with Wackenhut. A Wackenhut human resources manager interviewed Owens, and following the interview, Wacken-hut hired Owens as a security officer. Owens successfully passed Wackenhut’s training program, drug screening, and medical examination, and received the applicable security guard licenses from the State of Florida. In Owens’s employment application he marked the “no” box in response to a question asking whether Owens had any criminal convictions.
Wackenhut, through a subsidiary, also performed a background check on Owens, which revealed that Owens had been convicted in California for a misdemeanor disorderly conduct charge in 2004, but the background check revealed no details about the offense. Wackenhut never asked Owens why he had not disclosed the offense on his employment application, and Wackenhut did not attempt to obtain any of the paperwork from Owens’s 2004 California conviction. As it was later revealed, the specific offense for which Owens was convicted under California’s disorderly conduct statute was prowling and peeking into an inhabited building.

B. The incident

In June of 2010, Wackenhut assigned Owens to its security account for Old Cutler Bay, a residential community in Miami-Dade County. At around 2:40 a.m. on August 15, 2010, while Owens was on patrol duty in Old Cutler Bay, Owens used his cellular phone to record a video of Golzar, who was about to enter her senior year in high school, in a state of undress. Golzar observed Owens’s hand holding up his cellphone pressed on her window and, being quite alarmed at the sight, banged on the window and alerted others in her home of the incident.
After recording the video of Golzar, Owens fled from the Golzar home and drove back to the guardhouse in Old Cutler Bay. Shortly after Owens’s return to the guardhouse, one of Golzar’s friends drove to the guardhouse and informed Wackenhut officers of the incident. Owens returned to Golzar’s home, ostensibly to “investigate” the incident he caused. Owens misrepresented to Golzar’s family that Owens had seen a prowler and that he had called the police.
When the police did not arrive at Gol-zar’s home, Golzar’s mother phoned the police and learned that, despite Owens’s statement to the contrary, the police had not been notified of the incident. Ultimately, the police recovered Owens’s phone, which Owens had hidden in a retaining wall near his car. Owens came to *207 the police station and confessed to videotaping Golzar on that night and on two prior occasions. Owens was immediately terminated by Wackenhut and ultimately convicted of two criminal counts of video voyeurism.[1]

C. Golzar’s claims against Wackenhut

On November 18, 2010, Golzar filed the instant lawsuit against Wackenhut seeking both compensatory and punitive damages. Golzar claimed Wackenhut had negligently hired, retained, and supervised Owens. The basis of Golzar’s negligence claims was that Wakenhut should have known Owens had been convicted of peeking and prowling in California in 2004, and thus, Wackenhut was negligent in allowing Owens to work as a security guard in residential areas.

D. Golzar’s damages

Golzar sought compensatory, non-economic damages for the past and future emotional trauma caused by the incident. At trial, there was no evidence that Golzar had suffered any type of physical injury, and it was undisputed that Owens never touched or had any other physical contact with Golzar. Golzar did claim that, following the incident, she experienced some generalized illnesses and physical problems including weight gain, nightmares, and feelings of anxiety.
After the incident, in her senior year in high school, Golzar ran track, played soccer, and excelled academically. She was accepted at Duke University and awarded a full scholarship. At Duke, she also was involved in a number of extracurricular activities and excelled academically.
After trial, the jury returned a verdict in Golzar’s favor finding that Wackenhut had negligently hired, retained, and supervised Owens. The jury awarded Golzar $1,332,588.08 in damages.[2]

E.Wackenhut’s motions for summary judgment and directed verdict

Prior to trial, Wackenhut moved for summary judgment on the ground that Florida’s impact rule precluded recovery of the purely non-economic damages for emotional trauma that Golzar had suffered and might suffer in the future. Wacken-hut made a similar motion for directed verdict at the conclusion of Golzar’s case in chief, and in post-trial motions.[3] The trial court denied all of Wackenhut’s “impact rule” motions.
Wackenhut timely brings this appeal of the trial court’s order denying its Motions to Set Aside the Jury Verdict and Judgment and to Enter Judgment in Accordance with its Motion for Directed Verdict and Amended Motion for New Trial.
II. Standard of Review
When reviewing a pure question of law, such as the trial court’s denial of Wackenhut’s impact rule motions, our *208 standard of review is de novo. Keck v. Eminisor, 104 So.3d 359, 363 (Fla.2012).
III. Analysis
The issue before this Court is whether Florida’s impact rule precludes Golzar from recovering against Wackenhut purely non-economic damages for emotional distress for the torts of negligent hiring, negligent retention, and negligent supervision.

A, The impact rule in Florida

Florida’s impact rule provides that “before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact. The rule actually requires some impact on the plaintiff, or, in certain situations, the manifestation of severe emotional distress such as physical injuries or illness.” Fla. Dep’t of Corrs. v. Abril, 969 So.2d 201, 206 (Fla.2007) (citations and internal quotation marks omitted). The policy behind Florida’s impact rule is that “compensatory damages for emotional distress are ‘spiritually intangible,’ are beyond the limits of judicial action, and should be dealt with through legislative action rather than judicial decisions,” R.J. v. Humana of Fla., Inc., 652 So.2d 360, 362 (Fla.1995).
The Florida Supreme Court has crafted limited exceptions to Florida’s impact rule, recognizing that certain torts are necessarily devoid of physical harm and are of such a nature that the only foreseeable damages resulting from those torts are emotional damages that are non-economic in nature.
For example, in Abril, the Court recognized that “... the only reasonable damages arising from a breach of [Florida’s HIV confidentiality statute] are emotional distress,... ” 969 So,2d at 207-08. Similarly, our Supreme Court has noted that Florida’s impact rule does not apply to any intentional tort such as defamation, invasion of privacy and intentional infliction of emotional distress. Rowell v. Holt, 850 So.2d 474, 479 (Fla.2003).

B. Impact rule application to the torts of negligent hiñng, negligent retention, and negligent supervision

Against this backdrop, we analyze the torts of negligent hiring, negligent retention, and negligent supervision,[4] i.e., the three causes of action alleged against Wackenhut by Golzar. Specifically, we must determine, as a matter of first impression, whether to include these torts as limited exceptions to Florida’s impact rule. At the outset, we note that we have been provided no Florida case in which a court has not applied the impact rule to claims of negligent hiring, negligent retention, and negligent supervision.
In fact, several federal courts have applied Florida’s impact rule to preclude a plaintiffs recovery of purely non-economic damages for these torts. See Resley v. Ritz-Carlton Hotel Co., 989 F.Supp. 1442, 1449 (M.D.Fla.1997) (holding that a plaintiffs negligent retention and hiring claims failed at summary judgment because the plaintiff did not allege physical injury, thereby satisfying Florida’s impact rule); *209 see also Jenks v. Naples Cmty. Hosp., Inc., 829 F.Supp.2d 1235, 1257-58 (M.D.Fla. 2011) (granting defendant’s summary judgment on negligent supervision and retention claim where plaintiff failed to allege an impact and failed to provide any evidence showing that emotional distress aggravated plaintiffs breast cancer); Weld v. Se. Cos., Inc., 10 F.Supp.2d 1318, 1323 (M.D.Fla.1998) (granting motion to dismiss negligent supervision cause of action for failure to state a claim where plaintiffs complaint failed to satisfy the impact rule); Degitz v. S. Mgmt. Servs., Inc., 996 F.Supp. 1451, 1462 (M.D.Fla.1998) (applying Florida’s impact rule to plaintiffs negligent retention claim and granting defendant’s summary judgment “to the extent [pjlaintiff seeks damages for emotional distress”).
Additionally, in addressing whether Florida’s impact rule applies to the tort of negligent training, this Court has expressly held that the impact rule precludes recovery for such purely non-economic damages. Miami-Dade Cty. v. Cardoso, 922 So.2d 301 (Fla. 3d DCA 2006).

C. Abril

Nevertheless, Golzar argues that the Florida Supreme Court’s decision in Abril, which post-dates our decision in Cardoso, expands by implication the exceptions to Florida’s impact rule. We do not read Abril so broadly.
In Abril, a medical lab, contracted by Florida’s Department of Corrections, faxed false HIV test results of a Department of Corrections employee in violation of Florida’s HIV confidentiality statute, section 381.004(3)(f) of the Florida Statutes. The trial court dismissed Abril’s actions seeking compensatory damages for mental anguish and emotional distress based upon Florida’s impact rule. Abril’s lawsuit was reinstated after Florida’s Supreme Court determined that violation of Florida’s HIV confidentiality statute is the type of tort for which the only reasonably foreseeable damages are emotional distress damages. Abril, 969 So.2d at 207-08.

D. Abril distinguished

While Golzar’s damages stemming from Wackenhut’s failure to properly investigate Owens’s prior California conviction are, like Abril’s damages, emotional distress damages, it can hardly be said that the only reasonably foreseeable damages from any negligent hiring, negligent retention, and negligent supervision tort are emotional distress damages.
Indeed, Florida jurisprudence is replete with examples of an employer being held liable for personal injury damages and economic damages for its negligent hiring, negligent retention, or negligent supervision. See, e.g., Tallahassee Furniture Co., Inc. v. Harrison, 583 So.2d 744 (Fla. 1st DCA 1991) (affirming a jury verdict for negligent retention where furniture deliveryman brutally attacked plaintiff in her home); Abbott v. Payne, 457 So.2d 1156 (Fla. 4th DCA 1984) (reversing order granting motion to dismiss where plaintiff sufficiently stated a cause of action for negligent hiring when a former employer broke into plaintiffs home at night and physically assaulted her); Williams v. Feather Sound, Inc., 386 So.2d 1238 (Fla. 2d DCA 1980) (reversing order granting summary judgment where condominium negligently hired a maintenance man who assaulted a tenant).
Plainly, unlike in Abril, economic damages, as well as emotional distress damages, are reasonably foreseeable when an employer fails to screen and vet an employee properly. We do not view the torts of negligent hiring, negligent retention, and negligent supervision as torts in which the only foreseeable damages are non-eco *210 nomic damages; therefore, we conclude that Abril is distinguishable.[5]
a. “Merger” of Owens’s and Wakenhut’s conduct
Understandably, but without citing any precedent, Golzar urges us essentially to merge Owens’s intentional conduct (that is, his invasion of Golzar’s privacy) with Wackenhut’s negligent conduct, without differentiating between the two parties’ distinct actions. Golzar argues that when the only foreseeable damages stemming from an employee’s intentional conduct are non-economic, then Florida’s impact rule should have no applicability to the employer’s negligent conduct that facilitated the employee’s intentional conduct.
Almost by definition, however, the torts of negligent hiring, negligent retention, and negligent supervision are fundamentally distinct from the employee’s underlying, intentional wrong. Florida’s impact rule applies only to the torts of negligent hiring, negligent retention, and negligent supervision. In our view, blurring -the distinction would be the functional equivalent of imposing vicarious liability on an employer for the intentional tortious conduct of its employee. Florida courts have consistently rejected this notion. See Hennagan v. Dep’t of Highway Safety & Motor Vehicles, 467 So.2d 748, 750 (Fla. 1st DCA 1985). We do not read Abril so as to require such a “merger.”

b. Vicarious liability

Finally, Golzar suggests that Abril can be read to impose vicarious liability on an employer when it is foreseeable that the damages resulting from both (i) the employee’s intentional tort, and (ii) the employer’s negligent hiring, are purely non-economic.
We do not read Abril as standing for the proposition that an employer is somehow vicariously liable for the intentional tort of its employee. Importantly, in Abril, the Department of Corrections was vicariously responsible pursuant to statute for the negligence of the laboratory. 969 So.2d at 204. No such statutory undertaking is implicated in this case.
There is no indication in Abril, or in any other case cited to us, that an employer should be vicariously liable for an intentional tort of its employee committed outside the scope of employment. See Goss v. Human Servs. Assocs, Inc., 79 So.3d 127, 132 (Fla. 5th DCA 2012).
IV. Conclusion
While we are indeed sympathetic with Golzar in this case, and find Owens’s behavior to be reprehensible, in our view, these considerations are not sufficient to waive the applicability of Florida’s impact rule to the torts of negligent hiring, negligent retention, and negligent supervision. *211 We reverse the judgment on appeal and remand -with instructions to enter final judgment in favor of Wackenhut.
ROTHENBERG, J., concurs.

. There is no evidence that the videos were ever transferred from Owens’s phone onto a computer, uploaded to the Internet, or otherwise shared with anyone.

. The basis for the jury’s damage award was, as Golzar’s counsel argued in closing, equal to the cumulative hourly pay that Owens would have received as a Wackenhut employee from the date of the incident until the day Owens would reach the age of sixty-five.

.Wackenhut also made a post-trial motion pursuant to section 768.74 of the Florida Statutes seeking a remittitur of the non-economic damages awarded. Because of our decision, we need not, and do not, reach Golzar’s argument that Wackenhut’s motion for remittitur was untimely.

. “A claim for negligent hiring arises when, before the time the employee is hired, the employer knew or should have known that the employee was unfit. Liability in these cases focuses on the adequacy of the employer's pre-employment investigation into the employee's background. Liability for negligent supervision or retention, however, occurs after employment begins, where the employer knows or should know of an employee's unfitness and fails to take further action such as investigating, discharge or reassignment.” Malicki v. Doe, 814 So.2d 347, 362 n. 15 (Fla.2002) (internal citations omitted),

. In his compelling dissent, J. Shepherd suggests that modern Florida Supreme Court jurisprudence requires the application of the impact rule on an ad-hoc, case-by-case basis. And, because ‘‘[njone of the legal or historically advanced policy reasons for the application of the impact rule” are present, the impact rule should go into torpor in this case. While J. Shepherd might be correct in "divinfing] what the Florida Supreme Court would do if presented with the facts of our case,” we are reminded of the late economist Edgar Fiedler’s admonition: He who lives by the crystal ball soon learns to eat ground glass. We are more reticent than J. Shepherd to relegate the impact rule to the impact suggestion. Until either the Legislature or the Florida Supreme Court abrogates it, the impact rule remains essential to a plaintiff seeking recovery for emotional distress damages, i.e., in order to recover non-economic emotional distress damages, a plaintiff must show that the emotional distress flowed from physical injuries sustained in an impact. Humana of Fla., Inc., 652 So.2d at 363.