VERMONT SUPERIOR COURT
Orange Unit
5 Court Street
Chelsea VT 05038
802-685-4610
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-03666

**Baylie Ordway, et al v. R.T. Logging, Inc.**

## ENTRY REGARDING MOTION

Title:        Motion to Dismiss  (Motion: 1)
Filer:         Shapleigh Smith
Filed Date:    December 03, 2024

The motion is GRANTED IN PART and DENIED IN PART.

Defendant R.T. Logging, Inc. seeks to dismiss the present action on two theories.  First, Defendant contends that Plaintiffs Baylie Ordway and Lindsay Tabor lack an "actual injury" necessary to establish their negligent hiring and retention claim.  Second, Defendant separately contends that the NIED claim must fail as a matter of law due to lack of either "bodily injury or illness."  For the reasons discussed below, the Court finds Defendant's arguments on Plaintiff's NIED claims to be inconsistent with the "zone of danger analysis" under *Savard* and its successive line of cases, which are distinguishable from the precedent that Defendant relies upon from the *Zeno-Ethridge* case.  As to the negligent hiring and retention claim, the Court finds that Defendant's pleadings lack allegations of an actual physical harm suffered by Plaintiffs, which is a distinct and necessary element for such claims notwithstanding their connection to Plaintiffs' NIED claims.

### Background Facts

The present action and motion are premised on the following facts taken from Plaintiff's complaint as required under V.R.C.P. 12(b)(6).  *Boland v. Estate of Smith*, 2020 VT 51, at ¶ 2.

On December 22, 2021, Plaintiffs, working as Emergency Medical Technicians, responding to a crash site in Topsham, Vermont on Route 25.  The crash was caused, in part due to the wintery mix of precipitation that left the roads in the area slick and icy.  While attending to victims at the crash scene, Defendant's fully loaded logging truck was travelling east on Route 25 toward the site.  Despite a flagger being posted and an available turn-off, Defendant's driver continued to travel full

Entry Regarding Motion
24-CV-03666 Baylie Ordway, et al v. R.T. Logging, Inc.

Page **1** of **8**

speed through the area and down the hill. Defendant's speed was in excess of what was safe for the weather conditions. As he came into the crash scene and began to descend the hill, Defendant's driver lost control of the truck and trailer, which began to career toward Plaintiffs. Plaintiffs were able to move out of the way. They were not struck by the truck, which passed a few feet from them, over their original location. The truck then proceeded to crash into several cars, including Plaintiffs', at the bottom of the hill.

While Plaintiffs were not struck or physically impacted by the truck, Plaintiffs claim that they have developed severe and ongoing psychological and emotional injuries, including post-traumatic stress disorder.

## Standard of Review

To determine whether a complaint survives a motion to dismiss, the Court assumes the factual allegations in the complaint are true. *Colby v. Umbrella Inc.*, 2008 VT 20, ¶ 5. The Court will only grant the motion if there are no facts or circumstances that would grant plaintiff relief. Id. This is because the purpose of a motion to dismiss for failure to state a claim is "to test the law of the claim, not the facts which support it." *Brigham v. State of Vermont*, 2005 VT 105, ¶ 11 (quoting *Powers v. Office of Child Support*, 173 Vt. 390, 395 (2002)). Courts rarely grant motions to dismiss for failure to state a claim. *Colby*, 2008 VT 20, at ¶ 5; see also *Kaplan v. Morgan Stanley & Co., Inc.*, 2009 VT 78, ¶ 7. Courts generally disfavor these motions. *Bock v. Gold*, 2008 VT 81, ¶ 4 ("Motions to dismiss for failure to state a claim are disfavored and should be rarely granted."). For these reasons, a party seeking dismissal has a high burden to show that they are entitled to such an initial ruling. *Bock*, 2008 VT 81 at ¶ 4.

## Zone of Danger Analysis

Defendant's second argument concerns whether there has been substantial bodily injury or illness as a result of Defendant's negligence, which is a necessary element for any claim of NIED. *Brueckner v. Norwich University*, 169 Vt. 118, 125 (1999). Defendant's argument is that Plaintiffs have only cited to psychological injuries, specifically PTSD, which it contends are not physical injuries and cannot satisfy the substantial bodily injury or illness requirement.

Under Vermont law, the negligent infliction of emotional distress (NIED) concerns injuries arising out of emotional distress due to a party's negligence. *Vaillancourt v. Medical Center Hospital of*

*Vermont*, 139 Vt. 138, 143 (1980).  An NIED claim shares some similarities with what is known as an intentional infliction of emotional distress (IIED) claim.  To understand the mechanics of an NIED claims, it is helpful to contrast the elements of NIED with the elements of IIED.

Under Vermont law, a claim for the intentional infliction of emotional distress must show conduct: (1) that is extreme and outrageous; (2) that is intentional or reckless; and (3) that causes severe emotional distress.  *Thayer v. Herdt*, 155 Vt. 448, 455 (1990).  The elements specifically do not contain a presence requirement because the intentional or reckless nature is sufficient to satisfy that this outrageous act was directed at the plaintiff.  See id. (noting there is no presence or zone of danger requirement in IIED); see also *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 10 (noting that the outrageous and intentional act must "**actually or proximately cause**" the "extreme emotional distress") (emphasis added).

Despite the similarity, NIED concerns very different behavior, and a plaintiff must establish four elements to make out a claim.  First, the conduct must arise out of negligence.  *Savard v. Cody Chevrolet, Inc.*, 126 Vt. 405, 412 (1967).  There is no element requiring the conduct to be extreme or outrageous or that it rise to the level of intentional or reckless action.  Id.  In *Savard*, for example, the negligence arose from the conduct of the Defendant's foreman driving a truck down a steep hill despite the fact that it was known to have defective brake issues.  Id.  Second, the negligent action must have proximately caused the alleged shock or fright.  Id. at 410.  The third element is whether the conduct resulted in a physical impact with the plaintiff or if the plaintiff was in the zone of danger.  *Vaillancourt v. Medical Center Hospital of Vermont*, 139 Vt. 138, 143 (1980).  This element effectively divides NIED into two types of cases, zone of danger cases and actual physical contact cases.[1]

When a plaintiff suffers no physical injuries from defendant but is located within a "zone of danger," the Court may still consider their claims for NIED.  This line of cases evolved out of the Vermont Supreme Court's rejection of the "impact rule" in the late 1950s and 1960.  *Guilmette v.*

---

[1] In contrast to "Zone of Danger" claims, NIED claims arising from physical-impact need only show that they faced physical peril from an act of negligence, that there was a physical impact, and there was injury arising from the impact. *Brueckner*, 169 Vt. at 125.  In such claims, a plaintiff need not be in the "zone of danger," but there must be a physical impact to them, from which they suffer emotional distress.  The most recent analysis of this type of claim is found in *Zeno-Ethridge v. Comcast Corp.*, 2024 VT 16, where the Court reaffirmed the physical-impact requirement and rejected arguments seeking to lessen or modify it for a plaintiff who witnessed the gruesome and unfortunate death of a road worker.

*Alexander*, 128 Vt. 116, 117 (1969); see also *Savard*, 126 Vt. at 410; *Thompson v. Green Mountain Power*, 120 Vt. 478, 487(1958).  The "impact rule" was a court-created doctrine that required physical trauma or impact for all negligence claims, including NIED.  As early as the 1930s, this rule was being criticized, and by the time of *Thompson*, it was largely rejected.  Id.[2]  The problem that arises from eliminating the "impact rule" is that without some limitation, there is no foreseeability as to who a party may owe a duty and what the extent of that duty might be.  Id. at 485–86.  The language of *Thompson* is instructive in this respect:

> Foresight of harm lies at the foundation of negligence.  Knowledge of danger on the part of the actor is vital to the creation of the duty to exercise care in any given situation where injury to the person or property of others is at stake.  And the opportunity for knowledge, when available by the exercise of reasonable care, is the equivalent of knowledge itself.

> Knowledge essential to the invocation of legal duty, need not be actual; it may be implied, imputed and constructed from the circumstances.  Knowledge of the true facts may be essential to careful conduct. And where knowledge is required, voluntary ignorance is culpable and affords no protection from legal liability.

Id. at 483 (internal citations omitted).  As Justice Larrow pithily notes in *Guimette*, a successor case to *Thompson*, "negligence can only spring from an unperformed duty."  128 Vt. at 117.  To address this concern, Vermont courts have adopted the "Zone of Danger" analysis.  In *Savard*, one of the first Vermont cases to apply this concept, the "Zone of Danger" is defined as "one who is within the range of ordinary physical danger from that negligence . . . ."  126 Vt. at 410.  Specifically, the person claiming under an NIED claim must have reasonably feared for their personal safety, not another's.  128 Vt. at 118.

What this means is that someone who witnesses negligence and may have resulting fright or shock—in part what we would label as trauma or Post-Traumatic Stress Disorder today—cannot bring a claim for NIED, no matter how sympathetic the claim might be.  *Zeno-Ethridge v. Comcast Corp.*, 2024 VT 16, ¶ 15.

The fourth and last element of an NIED claim is that the plaintiff must suffer a "substantial bodily injury or illness as a result of the shock and fear."  *Brueckner*, 169 Vt. at 125 (citing *Vailancourt*,

---

[2] The facts of *Thompson* involve a derivative question of fright to animals.  Id.  In *Thompson*, the Defendant conducted blasting that caused Plaintiff's flock of chicken to panic and lapse into a state of fear that later resulted in their molting, losing weight, and ceasing to produce eggs.  Id. at 479–82.

139 Vt. at 143). This element requires that the trauma of the incident have a physical manifestation—"some bodily hurt." *Fitzgerald v. Congleton*, 155 Vt. 283, 292 (1990). Some of the policy reasons behind this requirement can be found in the Court's discussion of the similar concept of "actual injury" in *Zeno-Ethridge*. 2024 VT 16, at ¶ 14 (discussing the "inherently subjective nature of . . . emotional injuries").

Defendant's motion to dismiss hinges upon the distinction between "actual injury" as an element of negligence and the requirement of "substantial bodily injury or illness" in NIED. The question raised by Defendant is whether the two terms are interchangeable. The caselaw is not entirely consistent. Defendant refers to the discussion in *Zeno-Ethridge* concerning PTSD and similar psychological-based injuries and illnesses, which the Vermont Supreme Court found could not constitute an actual injury for the purposes of an NIED claim based on physical-contact. 2024 VT 16, ¶¶33–36. Yet, the *Zeno-Ethridge* decision expressly limits its analysis to "physical impact derivation of NIED claims" and not zone of danger NIED claims. Id. at ¶ 6, n.3 (citing *Bruckner*, 169 Vt. at 125 (distinguishing between NIED cases)).

In contrast, Plaintiffs note, the original "substantial bodily injuries" described in *Savard* appear to be physical manifestations of psychological harm. 125 Vt. at 406–07 ("Plaintiff testified that as a result of the accident she suffered a severe nervous shock, emotional distress, sleeplessness and loss of appetite which resulted in a loss of weight and having to undergo medical treatment and care for a period of some months."). Yet, only four years later, the holding of *Sheldon v. Brooks* appears to bring the physical requirement element from *Savard* closer to the negligence concept of actual injury:

> But the holding in [*Savard*] was that when the negligence of a defendant causes fright from a reasonable fear of personal injury, and such fright is adequately demonstrated to have resulted in substantial bodily injury or sickness, the injured person may recover **if such injury or sickness would be proper elements of damage if they had resulted as a consequence of direct physical injury rather than fright**.

*Sheldon v. Brooks*, 130 Vt. 95, 97 (1971) (emphasis added).

Nevertheless, the language from *Sheldon* also ties the physical injury to the shock and fright experienced by the incident and not from the negligence itself. Id. As such, it is a physical manifestation of some bodily injury, but it need not be separate or distinct from the underlying emotional distress. This interpretation further fits within *Zeno-Ethridge*'s determination that PTSD

does not constitute an "actual injury" because it is a psychological injury with physical manifestations, not a physical injury in and of itself. 2024 VT 16, at ¶ 34. In this analysis, the Vermont Supreme Court does not deny that PTSD has physical manifestations or components, but the origin of the injury is psychological, which cannot constitute an "actual injury" under negligence or physical-impact derivations of NIED because doing so would destroy the "logical divide between emotional and physical harms." Id. (quoting *Bobian v. CSA Czech Airlines*, 232 F.Supp. 2d 319, 326 (D.N.J. 2002) (internal quotations omitted). But it is precisely the nature of zone of danger derivation NIED claims that they function as an exception to this actual injury requirement. Unless it is accompanied by some other negligence, the harm from a zone of danger claim will always derive from an emotional harm and any physical manifestation will come from the psychological harm.

If a plaintiff is claiming NIED and cannot point to a physical contact, then they must show that they were within a zone of danger where physical impact was possible. In the present case physical impact did not occur because of luck or reflex, but the fear and danger, as alleged, was real. As articulated in *Vailancourt*, the injury, however, may not be limited to an internal emotional harm that can only be detected by the plaintiff. 139 Vt. at 143. There must be some accompanying, significant physical component, but this physical component derives through the emotional distress or fear because zone of danger cases are necessarily limited to emotional impacts caused by the negligence that did not make physical contact.

If accepted, an interpretation that renders physical symptoms derived from an emotional harm insufficient for a zone of danger claim would effectively add an extra element to the claim not found within *Vailancourt*. Not only would a plaintiff have to prove that they were within the zone of danger and suffered emotional trauma with significant bodily injury or illness, but they would have to show that the concomitant physical harm arose from a separate source apart from the emotional trauma. Such an interpretation is simply the contrapositive of the holding in *Zeno Ethridge* and would add an element of "actual injury" to zone of danger claims, thereby "rendering these torts indistinguishable and pointlessly duplicative." 2024 VT 16, at ¶ 34; see also id. at ¶¶ 33–36.

Based on this, the Court finds that Plaintiffs' complaint for NIED is sufficient for purposes of surviving Defendants' motion to dismiss. The Court will note that the pleading of PTSD, while suggesting physical manifestations, does not relieve Plaintiffs from showing what substantial bodily injury or illness they suffered from the emotional distress as a physical manifestation through the

discovery process.  If the harm has been strictly emotional or limited in its physical component, Defendants may renew this motion to dismiss through the summary judgment process.

### Actual Injury for Negligent Hiring and Retention Claim

Plaintiff's first claim against Defendant is founded on the duties that Plaintiffs claim Defendant owed the public to hire and retain qualified drivers on the road.  Plaintiffs notes that trucking is a highly regulated business with numerous state and federal rules and laws governing how large commercial vehicles operate on public highways.  In the facts, Plaintiffs can show that Defendant owed a duty to Plaintiffs (derived from state and federal law) and breached those duties in the unsafe operation of the logging truck.

Plaintiffs' claim is effectively a claim for negligent supervision, which is defined by Section 213 of the Restatement (Second) of Agency.  The problem with Plaintiffs' negligent hiring and retention claim is that such a claim must separately satisfy the elements of a traditional negligence claim.  *Haverly v. Kaytec, Inc.*, 169 Vt. 350, 357 (1999).  Specifically, a plaintiff must show (1) that defendant owed a duty to forbid or prevent another (usually an employee) from committing a tort or wrongful act; (2) the defendant breached the duty by failing to prevent the employee from committing the tort or wrongful act; (3) the breach was the proximate cause of plaintiff's injuries; and (4) there was actual injury as a result.  Id.  In this case, Plaintiffs can, for the purpose of the present motion, satisfy elements one through three.  Defendant had a duty to prevent its drivers from operating in an unsafe manner.  Plaintiffs allege that Defendant failed to take these steps.  The result was a fully loaded logging truck that nearly struck both Plaintiffs.

It is the fourth element of "actual injury" on which Plaintiffs' complaint falters.  As noted above, there was no actual injury as that term is defined because there was no physical impact and no physical injury, only emotional injuries with physical manifestations.  While Plaintiffs urge the Court to adopt the emotional harm and its physical manifestations of their NIED claim as the actual injury, Plaintiffs cannot cite to any case law that would allow the actual injury requirement in a negligent supervision claims to be displaced by an emotional harm.  In this respect, the Defendant's argument is fully consistent with the Court's analysis in *Zeno-Ethridge.*  2024 VT 16, at ¶¶ 33–36.  The emotional harm and resulting physical manifestations are not actual injuries for the purpose of a negligence claim.

While *Zeno-Ethridge* does not involve a derivative supervision claim, the Court has found that at least one other jurisdiction has followed this distinction with negligence hiring, retention, and supervision claims. In *G4S Secure Solutions USA, Inc. v. Golzar*, the Florida Court of Appeals applied Florida's impact rule to claims of negligent hiring, retention, and supervision that prevented the claims going forward when the underlying harm was primarily emotional and was permitted to proceed against the employee. 208 So.3d 204, 208–09 (Fla. App. 2016). The reasoning found in *G4sSecure Solutions, Inc.* and the cases cited in that decision is that the torts of negligent hiring, retention, and supervision are distinct from the underlying harm, and a plaintiff seeking to assert these claims must establish the separate, physical harm required by the elements of negligence. Id. The exception that allows the NIED claim to include emotional harm cannot be expanded to derivative claims that still require proof of all four elements of a negligence. In this respect, the holding from *Zeno-Ethridge* is controlling. 2024 VT 16, ¶¶33–36.

## ORDER

Based on the foregoing, Defendant's Motion is **Granted in Part and Denied in Part.** Defendant's motion to dismiss Plaintiffs' NIED claim is **Denied.** Defendant's motion to dismiss Plaintiffs' Negligent Hiring and Retention claim is **Granted.**

Electronically signed on 1/14/2025 7:37 AM pursuant to V.R.E.F. 9(d)

Vermont Superior Court
Filed 01/15/25
Orange Unit

Daniel Richardson
Superior Court Judge