969 So.2d 201 (2007)
FLORIDA DEPARTMENT OF CORRECTIONS, Petitioner,
v.
Lisa M. ABRIL, et vir., Respondents.
No. SC04-1747.
Supreme Court of Florida.
October 18, 2007.
*202 Bill McCollum, Attorney General, Tallahassee, Florida and David J. Glantz, Assistant Attorney General, Fort Lauderdale, FL, for Petitioner.
Dick W. Mounts, Minerva, OH, for Respondent.
Robert S. Glazier, Miami, FL, on behalf of Academy of Florida Trial Lawyers, as Amicus Curiae.
PER CURIAM.
This case is before the Court pursuant to a certified question of great public importance from the Second District Court of Appeal. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. The appellee, Lisa M. Abril, sought damages based upon negligence in the unauthorized disclosure of the results of her HIV testing. Abril v. Dep't of Corr., 884 So.2d 206, 207-08 (Fla. 2d DCA 2004). The district court reversed the trial court's dismissal of the case for failure to state a cause of action. Id. at 213. In reinstating the case, the Second District certified the following question to this Court as one of great public importance:
IS FLORIDA'S IMPACT RULE APPLICABLE IN A CASE IN WHICH IT IS ALLEGED THAT THE INFLICTION OF EMOTIONAL INJURIES HAS RESULTED FROM A CLINICAL LABORATORY'S BREACH OF A DUTY OF CONFIDENTIALITY UNDER SECTION 381.004(3)(f), FLORIDA STATUTES (SUPP.1996), WITH RESPECT TO HIV TEST INFORMATION?
*203 Id. While not approving all of the reasoning, we approve the district court's ultimate decision, answer the certified question in the negative, and hold that an entity that negligently and unlawfully violates a patient's right of confidentiality and privacy in disclosing the results of HIV testing of the patient may be held responsible in a civil negligence action for damages caused to the patient by the unlawful disclosure.

Proceedings to Date
The prior proceedings were summarized by the district court in the opinion below:
The amended complaint alleged that Mrs. Abril, in the course of her employment with the department as a senior licensed practical nurse at the Hendry County Correctional Institution [(HCCI)], had given unprotected mouth-to-mouth resuscitation to an inmate. After it was determined that the inmate was infected with hepatitis C and that it was unknown whether the inmate was infected with HIV, Mrs. Abril unsuccessfully sought testing for hepatitis and HIV through the department's workers' compensation carrier, which declined to authorize the testing because it determined that the resuscitation did not expose her to a risk of infection. Subsequently, the institution's chief medical officer submitted a blood sample from Mrs. Abril to Continental Laboratory, a laboratory under contract with the State of Florida to provide clinical laboratory services for inmates for HIV testing.
The complaint further alleged that a document indicating that the test results for HIV were positive was faxed to an unsecured fax machine in the institution's business office and to another fax machine in Tallahassee at the [Department of Corrections'] offices of Chief Health Services, despite Continental Laboratory's assurances set forth in a prior fax to a "confidentially-secured" fax machine in the institution's medical office that the results of the test were confidential and would be hand delivered. It was alleged that the faxes with the test results were sent in response to a request for the information from a department employee who was concerned that the use of Continental Laboratory for the testing of Mrs. Abril's blood might not have been authorized. The complaint also alleged that a number of persons employed by the department, who were not authorized by law to know of the test results, became aware of the test results through Continental Laboratory's transmission of the results to the fax machines. It was ultimately determined through testing, paid for by the workers' compensation carrier, that Continental Laboratory's HIV test on Mrs. Abril's blood had produced a false positive and that Mrs. Abril had not in fact contracted HIV.
Id. at 207. The Abrils subsequently filed a civil action, seeking damages, in part, for the mental anguish and emotional distress suffered by Ms. Abril arising from Continental's negligent failure to ensure the confidentiality and privacy of the HIV test results[1] and the subsequent negligence of Continental and the Department of Corrections in causing the test results to be improperly disseminated to others. Id. at 207-08.[2]
*204 Upon appeal of a trial court order dismissing the Abrils' action, the Second District, in a unanimous decision explained in an opinion by Judge Canady, reversed the trial court, analogizing the case to that of Gracey v. Eaker, 837 So.2d 348 (Fla.2002), in which this Court recently concluded that a civil action for damages arose from the breach by a psychotherapist of a statutory duty of confidentiality and privacy. Abril, 884 So.2d at 211-13. As in Gracey, the district court found that a statute, in this case section 381.004(3)(f), Florida Statutes (Supp.1996), supported the recognition of a cause of action for negligence based upon the alleged breach of a duty of confidentiality on the part of the health care providers who conducted Ms. Abril's HIV test. Id. at 212. Further, as in Gracey, the Second District concluded that the impact rule should not apply to bar such a claim even where no actual physical contact or injury was alleged. Id. at 212-13. We approve the district court's decision reinstating the negligence cause of action.

Analysis
This Court and other appellate courts review decisions resolving motions to dismiss under a de novo standard where those motions are based on a claim that no legal cause of action exists as alleged in the complaint. Siegle v. Progressive Consumers Ins. Co., 819 So.2d 732, 734 (Fla. 2002). Here, the amended complaint alleges an action based on the negligence of Continental Laboratories, charging the department with vicarious liability for this negligence under the agency provisions of section 768.28(10)(a), pursuant to which the State has waived immunity for the actions of health care services provided by private persons at the request of the department. See Abril, 884 So.2d at 207-08.
In their amended complaint, the Abrils alleged that Continental was negligent and that it "breached its professional duty [to Ms. Abril] by failing to provide that level of care, skill and treatment which, in light of all relevant surrounding circumstances is recognized as acceptable and appropriate by reasonably prudent similar health care providers." Because of this breach, the Abrils allege they suffered mental anguish and emotional distress. Id. In arguing for reconsideration after the trial court granted the department's motion to dismiss, the Abrils argued that their action was one for medical malpractice because of Continental's negligence resulting in breach of its duty to maintain the confidentiality of the test results. Thus, the Abrils essentially asserted a common law negligence claim against Continental utilizing the breach of the provisions of section 381.004(3)(f) as evidence of Continental's negligence.

DUTY
To maintain an action for negligence, a plaintiff must establish that the defendant owed a duty, that the defendant breached that duty, and that this breach caused the plaintiff damages. See Clampitt v. D.J. Spencer Sales, 786 So.2d 570, 573 (Fla.2001). This Court has held that while breach, causation, and damages are *205 ordinarily questions for the jury, "duty exists as a matter of law and is not a factual question for the jury to decide." McCain v. Fla. Power Corp., 593 So.2d 500, 503 (Fla.1992). It is the existence of a duty on the part of Continental that is at issue in this case.

Section 381.004(3)(f)
The district court relied primarily upon the provisions of section 381.004(3)(f) as the source of a duty of confidentiality owed by Continental to Ms. Abril. Section 381.004(3)(f) provides:
Except as provided in this section, the identity of any person upon whom a[n HIV] test has been performed and test results are confidential and exempt from the provisions of s. 119.07(1). No person who has obtained or has knowledge of a test result pursuant to this section may disclose or be compelled to disclose the identity of any person upon whom a test is performed, or the results of such a test in a manner which permits identification of the subject of the test. . . .
In rejecting the department's argument that no duty to Ms. Abril existed, the district court explained:
The complaint filed by the Abrils alleges facts that would be sufficient to establish that Continental Laboratory violated a duty imposed on it by section 381.004 to maintain the confidentiality of HIV test results and to disclose those results only as authorized by law. The issue presented for resolution thus is not whether the complaint's allegations are sufficient to establish the necessary elements of the existence of a duty and the breach of that duty. The dispositive question is whether the damages alleged  for mental anguish and emotional distress caused by Continental Laboratory's breach of its duty  are cognizable under Florida law. The answer to this question depends on whether the impact rule is applicable to the claims at issue.
Abril, 884 So.2d at 209-10. Although the district court did not elaborate in great detail on its analysis, we conclude that the court was correct in its conclusion that the Abrils had properly alleged a cause of action for negligence.
The courts of Florida have long recognized that the violation of a statute may be utilized as evidence of negligence. In Alford v. Meyer, 201 So.2d 489 (Fla. 1st DCA 1967), the court explained:
The rationale supporting the admission of a statute, ordinance, or administrative rule or regulation as prima facie evidence of negligence is that the standard of conduct or care embraced within such legislative or quasi-legislative measures represent a standard of at least reasonable care which should be adhered to in the performance of any given activity.
Id. at 491; see also deJesus v. Seaboard Coast Line R.R. Co., 281 So.2d 198 (Fla. 1973). Section 381.004(3)(f), at a minimum, creates a reasonable standard of care for handling HIV testing results, and Continental's breach of this statute by the improper release of Abril's results may be evidence that the laboratory acted negligently.
The district court also noted that in addition to the explicit provisions for confidentiality of HIV testing under section 381.004, health care laboratories are also governed by other provisions of the Florida Statutes, such as the Florida Clinical Laboratory Law in section 483.181(2), Florida Statutes (1995), which explicitly mandates that "[t]he results of a test must be reported directly to the licensed practitioner or other authorized person who requested it." Abril, 884 So.2d at 209 n. 1 (quoting section 483.181(2)). Indeed, Florida has a long tradition of recognizing the *206 privacy interests of patients in confidential medical records. See, e.g., State v. Johnson, 814 So.2d 390, 393 (Fla.2002) ("A patient's medical records enjoy a confidential status by virtue of the right to privacy contained in the Florida Constitution, and any attempt on the part of the government to obtain such records must first meet constitutional muster."). In addition to the specific provisions of section 381.004 protecting HIV testing, section 395.3025 of the Florida Statutes also expressly provides that a patient's medical records are confidential and must not be disclosed without the consent of the patient. Thus, it is apparent that more than one Florida statute may have been breached by the disclosure of Ms. Abril's confidential medical information.
Further, as is evidenced by our decision in Johnson, this Court has consistently and rigorously enforced the rights of patients to confidentiality in their medical records. In view of these multiple sources of a duty of confidentiality and privacy, it is not surprising that the Second District declared that "the existence of a duty on the part of Continental Laboratory to maintain the confidentiality of information relating to Mrs. Abril's HIV test is unquestioned." Abril, 884 So.2d at 213.[3] Because the Abrils could rely on the violation of several Florida statutes, including section 381.004, as evidence of negligence, we find no error in the district court's reinstatement of their civil action for negligence.

IMPACT RULE
As did the district court, we look to our decision in Gracey and reach a similar result as to the application of the impact rule. The impact rule, as applied in Florida, requires that "before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact." R.J. v. Humana of Fla., Inc., 652 So.2d 360, 362 (Fla.1995) (quoting Reynolds v. State Farm Mut. Auto. Ins. Co., 611 So.2d 1294, 1296 (Fla. 4th DCA 1992)).[4] The rule actually requires some impact on the plaintiff, or, in certain situations, the manifestation of severe emotional distress such as physical injuries or illness. Gracey, 837 So.2d at 355.
Although this Court has upheld the viability of the impact rule, it has recognized exceptions where a plaintiff may recover for emotional damages even though he or she suffered no impact or physical manifestation of the injuries. These exceptions, however, "have been narrowly created and defined in a certain very narrow class of cases in which the foreseeability and gravity of the emotional injury involved, and lack of countervailing policy concerns, have surmounted the policy rationale undergirding the application of the impact rule." Rowell v. Holt, 850 So.2d 474, 478 (Fla.2003). For example, we have noted that the impact rule does not apply to any intentional torts, such as defamation, *207 invasion of privacy, and intentional infliction of emotional distress. Id. at 478 n. 1. The rule also appears not to apply to "freestanding torts" which exist regardless of what emotional damages may accompany these torts, such as wrongful birth. See Kush v. Lloyd, 616 So.2d 415, 422 (Fla.1992).
In Gracey, this Court also recognized an exception to the impact rule for a breach of the duty of confidentiality as to the release of sensitive personal information. Gracey, 837 So.2d at 357. The Abrils assert that as with the breach of confidentiality in Gracey, the emotional damages resulting from the dissemination of confidential HIV test results are foreseeable and grave.
In the instant case, the Second District held that the impact rule did not bar the emotional distress damages asserted in the claim below. Abril, 884 So.2d at 213. The court again analogized the case to Gracey, where this Court held that the impact rule should not apply because the emotional distress the Graceys suffered as a result of their psychotherapist breaching his duty of confidentiality, was
at least equal to that typically suffered by the victim of a defamation or an invasion of privacy. Indeed, we can envision few occurrences more likely to result in emotional distress than having one's psychotherapist reveal without authorization or justification the most confidential details of one's life. Our reasoning in Kush thus provides ample support for the notion that the impact rule should be inapplicable to the instant case.
Gracey, 837 So.2d at 356. In Gracey this Court also relied on the statutory duty it found as evidence that the Legislature recognized that plaintiffs could be injured by breaches of the duty of confidentiality, regardless of whether they suffered any physical impact or injury. Id. at 357. The Second District stated that this same reasoning applied in the instant case, and also relied on this Court's opinion in Rowell, stating that "there is no legally significant distinction between the `foreseeability and gravity of the emotional injury involved' in the instant case and the `foreseeablity and gravity of the emotional injury' involved in Gracey." Abril, 884 So.2d at 212.
The district court noted that the statutes in Gracey and in the instant case had the same purpose of protecting individuals from disclosure of highly personal, sensitive information and in both situations, the only possible injury flowing from the violation of the respective statutes was emotional distress. Abril, 884 So.2d at 212. While the court noted that unlike Gracey, no technical fiduciary relationship existed between the laboratory and the plaintiffs, the duty of confidentiality owed to the plaintiffs was "unquestioned." Id. at 213.
We agree with the district court that this Court's analysis in Gracey sets strong precedential authority for this exception. At least one clear purpose behind the enactment of section 381.004(3)(f) was to ensure that people potentially exposed to HIV would get tested. The Legislature also apparently concluded, however, that people may resist HIV testing because of the fear that their results would become public knowledge. § 381.004(1), Fla. Stat. (Supp.1996). The specific safeguards provided by the statute to prevent disclosure lend weight to the argument that public dissemination of the test results would cause emotional distress, and thus Continental should have known that by sending the results in an unsecured fax, it was risking causing great emotional distress to the Abrils if an unauthorized party saw the test results.
Because the only reasonable damages arising from a breach of section *208 381.004(3)(f) are emotional distress, and because this emotional damage would be akin to that suffered by victims of defamation or invasion of privacy, we conclude they should not be barred by the impact rule. See Gracey, 837 So.2d at 356-57 (holding that the impact rule should not bar recovery because "[t]he emotional distress that [plaintiffs] allege they have suffered is at least equal to that typically suffered by the victim of a defamation or an invasion of privacy" and that "[i]mposition of the impact rule in this context would render the legislative intent and its statutory implementation meaningless and without substance"). Thus, based on our recent precedent in Gracey we agree that an exception to the impact rule should be made when a laboratory or other health care provider is negligent in failing to keep confidential the results of an HIV test.
Accordingly, we approve the Second District's decision reversing the trial court's dismissal of appellee's action and we further approve the court's holding that the impact rule does not bar a cause of action for a breach of confidentiality in negligently disclosing the results of HIV testing.
It is so ordered.
LEWIS, C.J., and ANSTEAD, PARIENTE, and QUINCE, JJ., concur.
PARIENTE, J., concurs with an opinion.
CANTERO, J., concurs in part and dissents in part with an opinion.
WELLS, J., dissents with an opinion.
BELL, J., dissents with an opinion, in which WELLS, J., concurs.
PARIENTE, J., concurring.
I agree with the majority that where a laboratory or health care provider negligently fails to maintain the confidentiality of HIV test results, Florida's impact rule does not preclude recovery of emotional distress damages. Under these circumstances, emotional distress damages are likely the only possible injuries flowing from the negligent conduct. Further, the "foreseeability and gravity of the emotional injury involved, and lack of countervailing policy concerns . . . surmount[] the policy rationale undergirding application of the impact rule." Rowell v. Holt, 850 So.2d 474, 478 (Fla.2003).
I write separately to once again express my view that the impact rule as it exists in Florida is no longer a viable mechanism for limiting recoverable damages in cases involving torts and to urge this Court to consider abolishing the impact rule. Although Justice Cantero and I might disagree as to the precise test that would replace the confusing and outdated impact rule, I agree with Justice Cantero that our case-by-case approach has done nothing to stabilize the law or to clarify when an exception will be recognized.
As I have explained in previous decisions, I would adopt the traditional foreseeability analysis applicable to negligence claims as the more appropriate framework for a limitation on tort recovery in this state. See, e.g., Willis v. Gami Golden Glades, LLC, 967 So.2d 846, 863 (Fla. 2007) (Pariente, J., concurring); Rowell, 850 So.2d at 484 (Pariente, J., specially concurring); Gracey v. Eaker, 837 So.2d 348, 359 (Fla.2002) (Pariente, J., concurring). "As a practical matter, the traditional foreseeability analysis eliminates the arbitrary requirement of the impact rule, which will lead to greater stability and greater predictability in this area of the law." Willis, 967 So.2d at 863 (Pariente, J., concurring). This analysis will also provide guidance to the lower courts in this state and end the need for district *209 courts to certify questions to this Court resulting from the lack of predictability as to when an exception to the impact rule will be created.
CANTERO, J., concurring in part and dissenting in part.
I agree that a violation of the confidentiality requirement in the HIV testing statute  section 381.004(3)(f), Florida Statutes (Supp.1996)  may be used as evidence of negligence. Such a result is consistent with a long line of cases dating back to deJesus v. Seaboard Coast Line Railroad Co., 281 So.2d 198 (Fla.1973). We did create some tension with deJesus by holding, in Murthy v. N. Sinha Corp., 644 So.2d 983 (Fla.1994), that legislative intent "should be the primary factor . . . in determining whether a cause of action exists when a statute does not expressly provide for one." Id. at 985. Therefore, if we were to assign so much weight to a statutory violation that we essentially created a private cause of action, without any legislative intent to do so, we would violate Murthy's principles. But we can reconcile deJesus and Murthy by relegating statutes to a lesser role in negligence cases. Even when a statutory violation provides some evidence of negligence, other proof of the defendant's level of care also will have to be considered. Moreover, the factfinder will have to evaluate other issues such as proximate cause and comparative negligence. These hurdles should prevent statutory evidence of negligence from becoming a statutory cause of action in disguise.
Consider, for example, a motorist involved in an accident while traveling thirty-five miles per hour in a thirty miles-per-hour speed zone. An injured plaintiff could use the violation of the posted speed limit as evidence of the driver's negligence, but the speeding alone would not conclusively establish breach of duty in the manner of negligence per se. Under an evidence of negligence standard, the injured plaintiff would still have to prove all the elements of negligence: duty, breach, causation, and damages. The driver's speeding could be used as one item of evidence, along with others, of negligent driving. See deJesus, 281 So.2d at 201 ("Proof of violation of a traffic ordinance is prima facie evidence only of `negligence'; proximate cause and other elements of actionable negligence must be proven independently.").
The Fourth District Court of Appeal applied this reasoning in Chevron U.S.A., Inc. v. Forbes, 783 So.2d 1215 (Fla. 4th DCA 2001). In Chevron, the plaintiff slipped and fell when he stepped into a puddle at a gas station. The trial court instructed the jury that it could find the gas station negligent per se for violating section 526.141, Florida Statutes (1997), which governs the general operation of self-service gas stations. The district court reversed, holding that "under deJesus, violation of section 526.141[was] merely evidence of negligence, rather than negligence per se." Id. at 1219. See also Lindsey v. Bill Arflin Bonding Agency, Inc., 645 So.2d 565 (Fla. 1st DCA 1994) (relying on deJesus to hold that violation of a handrails ordinance could only be used as evidence of negligence and not as negligence per se). These cases demonstrate the distinction between treating a statutory violation as evidence of negligence and treating it as negligence per se.
Because the majority suggests only a limited role for the HIV testing statute in negligence cases, I join that part of its analysis. I disagree with the majority, however, to the extent it creates yet another in a line of ad hoc, fact-specific exceptions to the impact rule. The rule, which dates back even further than deJesus, to at least International Ocean Telegraph Co. v. *210 Saunders, 32 Fla. 434, 14 So. 148 (1893), bars recovery of damages for emotional distress unless the distress flows from physical injuries sustained in an impact, or at least produces physical injuries itself. See, e.g., Rowell v. Holt, 850 So.2d 474, 477-78 (Fla.2003). In this case, it is undisputed that the plaintiffs have suffered no physical injuries. We already have refused to create an exception to the impact rule for a claim of negligent misdiagnosis of HIV. See R.J. v. Humana of Fla., Inc., 652 So.2d 360, 362 (Fla.1995). By allowing recovery of emotional distress damages for disclosure of an HIV diagnosis, but not for the arguably more distressing misdiagnosis, the majority further complicates an already unpredictable and confusing jurisprudence.
As I explain in my dissent in Willis v. Gami Golden Glades, L.L.C., 967 So.2d 846, 867-68 (Fla. 2007) (Cantero, J. dissenting), we traditionally have held that plaintiffs seeking to recover for emotional distress in a negligence action must demonstrate that they suffered a physical injury sustained in an impact. This requirement is known as the impact rule. We have gradually refined the rule to where the physical injury need not result from the impact, but can now also result from the emotional distress itself. See, e.g., Champion v. Gray, 478 So.2d 17, 18 (Fla. 1985). In Willis, however, this Court further relaxed the rule to allow recovery for mere impact, without any physical injury at all. See Willis, 967 So.2d at 850-51. As revised, the rule has been rendered useless, hinging recovery on arbitrary factors unrelated to a claim's authenticity. For example, in Willis, recovery depended on whether the gun that an armed robber pointed at the victim's head actually touched her. Thankfully, we need not ask such arbitrary questions here because the plaintiffs have not even alleged an impact. Even under Willis's generous formulation, therefore, they cannot satisfy the impact rule.
The majority nevertheless allows recovery for emotional distress because it concludes that the impact rule does not apply to a laboratory's (or other health-care provider's) negligent disclosure of confidential HIV test results. Majority op. at 207-08. The majority thus creates another ad-hoc exception to the impact rule to cover the specific facts of this case.
Of course, this is hardly the first time we have created a fact-specific exception to the rule. As I noted in Willis, we have essentially created exceptions whenever we felt that applying the rule would be unjust. See, e.g., Rowell, 850 So.2d at 474 (creating an exception for legal malpractice that needlessly extends a client's imprisonment); Gracey v. Eaker, 837 So.2d 348 (Fla.2002) (creating an exception for negligent breach of confidentiality by a psychotherapist); Hagan v. Coca-Cola Bottling Co., 804 So.2d 1234 (Fla.2001) (creating an exception for ingestion of a contaminated food or beverage); Tanner v. Hartog, 696 So.2d 705 (Fla.1997) (creating an exception for negligent stillbirth); Gonzalez v. Metro. Dade County Pub. Health Trust, 651 So.2d 673 (Fla.1995) (creating an exception for negligent handling of a corpse); Kush v. Lloyd, 616 So.2d 415 (Fla.1992) (creating an exception for negligent failure to diagnose an inheritable genetic impairment). Discerning the logical relationship among these exceptions is a challenge. Constructing a predictable jurisprudence from them is impossible.
Today the majority extends the exception we created when a psychotherapist breached a duty of confidentiality, citing that case as "strong precedential authority" for creating another exception when a laboratory negligently discloses confidential *211 HIV test results. Majority op. at 207-08. But the two situations are easily distinguished. In Gracey, 837 So.2d at 348, a psychotherapist allegedly breached his fiduciary duty to his patients by disclosing confidential information about them. We concluded that "the nature of the fiduciary relationship in the psychotherapist-patient and physician-patient contexts and the attendant duty of confidentiality imposed on the practitioner, along with the intent of the Legislature" in demanding confidentiality, served as "ample authority to determine that the impact rule should be inapplicable." Id. at 357. By contrast, the plaintiffs in this case did not allege a fiduciary relationship with the laboratory. They only alleged common-law negligence.
The majority dismisses this distinction, emphasizing that both Gracey and this case involved an alleged "disclosure of highly personal, sensitive information" in violation of a statute. Majority op. at 207. That may be true, but in Gracey we did not hold, and the decision did not even imply, that we were establishing a broad exception to the impact rule for any disclosure of statutorily protected information. The exception was expressly limited to "cases in which a psychotherapist has created a fiduciary relationship and has breached a statutory duty to his or her patient." Gracey, 837 So.2d at 357. Not only did we identify the fiduciary relationship as essential, we also cautioned that the exception would be confined to "the particular facts of the case before us" and "should not be construed as bringing into question the continued viability of the impact rule in other situations." Id. at 358. Today's decision contradicts Gracey while claiming to apply it.
The majority also analogizes the distress caused by the disclosure of HIV test results "to that suffered by victims of defamation or invasion of privacy," majority op. at 207-08, for whom recovery of emotional distress damages is allowed. But defamation and invasion of privacy are intentional torts. As we recently explained, "the impact rule is inapplicable to recognized intentional torts that result in predominantly emotional damages such as intentional infliction of emotional distress, defamation, or invasion of privacy claims." So. Baptist Hosp. of Fla., Inc. v. Welker, 908 So.2d 317, 320 (Fla.2005). In this case, the plaintiffs do not allege an intentional tort. If the majority means to imply that any negligence claim resulting in predominantly emotional damages of the sort seen in defamation and invasion of privacy claims (e.g., public humiliation, feelings of intrusion) is now exempted from the impact rule, then the exceptions have truly swallowed the rule. Almost any negligent act can be portrayed as humiliating or intrusive. If, on the other hand, the majority means to imply that the amount of emotional distress must be equal to that caused by defamation and invasion of privacy, the majority offers no scale for measuring levels of emotional distress. The intentional torts of defamation and invasion of privacy range in severity across a wide spectrum  just as negligence claims do. Again, the rule will essentially disappear.
While drawing these tenuous analogies to some of our less relevant precedents, the majority essentially ignores the case most on point  Humana, 652 So.2d at 362. There, we refused to create an exception to the impact rule for the negligent misdiagnosis of HIV. We reasoned that "it would be exceedingly difficult to limit speculative claims for damages in litigation under such an exception." Id. at 364. In this case, the plaintiffs also allege an HIV misdiagnosis. They further allege that the test results were negligently disclosed to third parties. Yet rather than follow Humana *212 and apply the impact rule, the majority establishes a new exception for the negligent disclosure of HIV test results. As a result, plaintiffs may now recover emotional distress damages for the disclosure of negative test results but not for a misdiagnosis of HIV-positive results. This upside-down jurisprudence defies the purpose of the impact rule, which is to limit recovery to those cases where we are most confident that real emotional distress has occurred. We have no reason to believe that telling an unauthorized third party about a person's HIV test results (which may be negative) is more likely to cause emotional distress than misinforming a patient that she is infected with HIV. The opposite is more likely true. The impact rule was designed to avoid such speculation.
I admit the impact rule is imperfect. Its underlying assumption  that those who sustain physical injuries are more likely to suffer serious emotional distress than those who do not  offers consistency at the price of flexibility, which means that sometimes its application to a specific case may seem unjust. Moreover, the rule has confused the lower courts, producing a steady stream of certified questions for this Court to answer. Because of these problems, I remain willing to scrap the rule and replace it with a more workable analysis, as I recommend in Willis. See Willis, 967 So.2d at 876-77 (Cantero, J., dissenting). But chipping away at the rule with yet another fact-specific exception  especially in a case so similar to one in which we refused to create one  will only add to the exceptions' arbitrariness, create more confusion about when the rule applies, and generate more certified questions  which, if our recent decisions are any indication, will lead to even more exceptions. Until we replace the current rule with one more equitable and predictable, we should apply the one we have and stop creating exceptions at every turn. To the extent the majority refuses to apply the rule here, I respectfully dissent.
WELLS, J., dissenting.
I dissent from the majority's decision because I cannot see how this negligence case, involving results from an HIV test, materially differs from R.J. v. Humana of Florida, Inc., 652 So.2d 360 (Fla.1995), which involved negligence in respect to an HIV test. In R.J. v. Humana, the majority of this Court held that the impact rule barred recovery, whereas the present majority holds that the impact rule does not bar recovery.
I find the majority's opinion to be particularly inconsistent in view of the present majority's reliance on Gracey v. Eaker, 837 So.2d 348 (Fla.2002), for the present holding, in view of the following from the Gracey opinion at 358:
On the other hand, our holding should not be construed as bringing into question the continued viability of the impact rule in other situations. Six years ago, this Court stated its belief in the overall efficacy of the impact rule:
We reaffirm . . . our conclusion that the impact rule continues to serve its purpose of assuring the validity of claims for emotional or psychic damages, and find that the impact rule should remain part of the law of this state.

R.J. v. Humana of Florida, Inc., 652 So.2d at 363. Today we simply hold that the impact rule is inapplicable under the particular facts of the case before us.
BELL, J., dissenting.
If it were appropriate to answer the question as certified, I would agree with Justices Wells and Cantero that the impact *213 rule bars the Abrils from recovering damages for emotional distress and that we should resist creating another exception. However, because the Abrils do not rely upon the duty of confidentiality created by section 381.004(3)(f), the certified question has no basis in the record and, therefore, should be revised. Furthermore, the majority opinion fails to confine its answer to the medical malpractice action brought by the Abrils. Regardless, because the majority has chosen to answer the question as certified, I must discuss a more fundamental concern I have that is not addressed by the other dissenting opinions.
I am concerned that the majority's opinion leaves the impression that after Gracey v. Eaker, 837 So.2d 348 (Fla.2002), and this case, the law in Florida is that a breach of any clear statutory duty will give rise to tort liability irrespective of the remedies chosen by the Legislature to address any such breach. Moreover, I am concerned that in answering the certified question and approving the decision below, the majority does not simply approve the use of an existing tort action, but it approves the use of a new common law tort.[5] Modifying or abrogating the common law to allow a new tort based on the breach of a statutorily created duty (not to mention creating another exception to the impact rule) is a very significant policy decision. And that the majority would do so without any meaningful consideration of legislative intent and purpose is contrary to our precedent and the limited role the judiciary is supposed to play in our form of government.
I will elaborate below on each of these concerns. In the first part (I), I discuss my concerns regarding the propriety of answering the question as certified as well as the majority's failure to limit its answer to the medical malpractice context. In the second part (II), I discuss my concerns that the majority is modifying the common law in order to provide a private remedy that would not otherwise exist and that it is doing so without any meaningful examination of legislative intent. At the end of this discussion, I distinguish Gracey.

I.

A. The Certified Question Should Be Revised
The certified question is not supported by the record and, therefore, should be revised. The certified question asks whether Florida's impact rule applies "in a case in which it is alleged that the infliction of emotional injuries has resulted from a clinical laboratory's breach of a duty of confidentiality under section 381.004(3)(f)." Abril v. Dep't of Corr., 884 So.2d 206, 213 (Fla. 2d DCA 2004). No such case is before this Court. The Abrils have repeatedly disclaimed any reliance upon the duty of confidentiality created by section 381.004(3)(f). As stated in their brief to us:

*214 For the reasons stated in this Brief, Respondents do not believe this case concerns this certified question, because Respondents do not rely on Section 381.004 at all in their Amended Complaint. . . .
. . . .
Respondents' cause of action for medical malpractice relies upon expert witnesses who will testify, as they have indicated in their reports, that Continental violated prevailing standards of practice when its employees negligently disclosed results of confidential blood test results to persons not authorized to receive those results.

Respondents will not rely upon Section 381.004 to prove breach of standards. Respondents will rely upon the testimony of a medical expert (pathologist with clinical laboratory experience) who will testify concerning the breach of prevailing professional standards.
Amended Respondents' Answer Br. at 3-4 & n. 2 (emphasis added).
The record confirms the Abrils' position. Their amended complaint never mentions or relies upon section 381.004.[6] It simply alleges that the laboratory "breached its professional duty . . . in that it revealed the contents of Abril's HIV test results to persons not authorized to receive the information." In this light, the majority's statement that "the Abrils essentially asserted a common law negligence claim against Continental utilizing the breach of the provisions of section 381.004(3)(f) as evidence of Continental's negligence" has no basis in the record. Majority op. at 204. Consequently, because this case is clearly not "a case in which it is alleged that [the injury] has resulted from a . . . breach of a duty of confidentiality under section 381.004(3)(f)," majority op. at 202, the certified question should be revised.

B. The Abrils' Claim Is for Medical Malpractice
My concern about this Court's answering the question as certified is amplified by the breadth of the majority's opinion. The majority fails to confine its decision to the medical malpractice context. As noted in the above quote from the Abrils' brief, their claim is one for medical malpractice, a very specialized form of tort action. The Abrils' counsel reiterated this point at oral argument. He said, "Kush v. Lloyd is the case I am primarily relying upon, medical malpractice." Kush v. Lloyd, 616 So.2d 415 (Fla.1992).[7] Not only does the majority opinion ignore the fact that the Abrils adamantly disclaim any reliance upon section 381.004, it also essentially ignores the fact that this question arose in the context of a medical malpractice action. In doing so, the majority never discusses Kush, the primary case upon which the Abrils say they rely.

II.
Having challenged both the appropriateness of answering the question as certified as well as the majority's failure to answer the question in the context of the cause of *215 action as pled, I now address my substantive concerns about the majority's opinion. To reiterate, I am concerned that, in approving the decision below, the majority seemingly concludes that a breach of any clear statutory duty creates potential tort liability irrespective of the remedies expressly provided by the Legislature. Moreover, in doing so, the majority recognizes a new common law action for nonintentional, negligent breaches of the duty of confidentiality in section 381.004(3)(f). And, most importantly, it does so without any meaningful consideration as to whether modifying or abrogating the common law to add this new tort remedy is consistent with legislative intent. Certainly, this Court has the discretion to provide such a remedy, but as the Restatement (Second) of Torts cautions, this Court "must be careful to exercise that discretion cautiously and soundly." Restatement (Second) of Torts § 874A cmt. d (1979). Respectfully, given the complete absence of any meaningful consideration of legislative intent, I do not find the majority's exercise of this Court's discretion to be either cautious or sound.
In support of my position, I first establish that the majority opinion seemingly approves the Second District's conclusion that a breach of any clear statutory duty may give rise to tort liability. Then, I explain why this Court should apply a legislative intent analysis and why this analysis requires that the district court's opinion be quashed. Finally, I discuss why Gracey is distinguishable and should not be extended to an action in simple negligence.

A. The Majority's Approval of Breach of Statutory Duty Necessarily Giving Rise to Civil Liability
By answering the question as certified, approving the decision below, and concluding that the district court "was correct in its conclusion," the majority's opinion leaves the impression that this Court is validating the Second District's interpretation of this Court's precedent. Majority op. at 205. Relying primarily on Gracey, the Second District determined that a breach of the duty of care imposed by section 381.004(3)(f) gives rise to tort liability. It concluded that "[w]hen a statute creates a clear duty of care, the violation of that duty can `generate[ ] a viable cause of action in tort.'" Abril, 884 So.2d at 209 (quoting Gracey, 837 So.2d at 353, and citing deJesus v. Seaboard Coast Line R.R. Co., 281 So.2d 198 (Fla.1973), as well as Lewis v. City of Miami, 127 Fla. 426, 173 So. 150 (1937)). The Second District reached this conclusion without any examination of legislative intent, particularly the efficacy of the express statutory remedies.[8] The effect of that decision was to add a new tort remedy to the administrative and criminal remedies the Legislature provided for breaches of the duty in section 381.004(3)(f). The majority applies the same basic analysis. Indeed, in answering the question as certified, the majority seems to agree with the Second District *216 that, irrespective of legislative intent, the law in Florida after Gracey is that "[w]hen a statute creates a clear duty of care, the violation of that duty can `generate[ ] a viable cause of action in tort.'" Id.[9]
The majority's apparent agreement with the Second District's outdated analysis is exacerbated by the breadth of its holding. The majority holds "that an entity that negligently and unlawfully violates a patient's right of confidentiality and privacy in disclosing the results of HIV testing of the patient may be held responsible in a civil negligence action for damages caused to the patient by the unlawful disclosure." Majority op. at 203. This holding represents a significant change in Florida tort law. Previously, a cause of action for breach of confidentiality or invasion of privacy had been limited to the province of intentional torts. See, e.g., S. Baptist Hosp. of Fla., Inc. v. Welker, 908 So.2d 317, 320 (Fla.2005) (categorizing invasion of privacy claims as within the gamut of intentional torts); Rowell v. Holt, 850 So.2d 474, 478 n. 1 (Fla.2003) (same). By approving a cause of action for a nonintentional, negligent breach of a duty of confidentiality, the majority expands breach of confidentiality or invasion of privacy actions to the much broader realm of general negligence. In doing so, the majority recedes from this Court's prior decisions sub silentio. Simply stated, the majority's broad holding effectively modifies or abrogates the common law by recognizing a new common law cause of action for the negligent breach of the duty of confidentiality created by section 381.004(3)(f).

B. Consistency with Legislative Intent Is Necessary
Adding to the legislatively prescribed remedies for breaches of a statutory duty by creating a new common law remedy without any meaningful examination of legislative intent is contrary to the judiciary's proper function in our form of government. It is contrary to the principle this Court recognized over twenty-five years ago, when it said:
As a general rule, that part of the common law codified by section 2.01 should be changed through legislative enactment and not by judicial decision. Only in very few instances and with great hesitation has this Court modified or abrogated any part of the common law enacted by section 2.01, and then only where there was a compelling need for change and the reason for the law no longer existed. E.g., Hoffman v. Jones, 280 So.2d 431 (Fla.1973).
Raisen v. Raisen, 379 So.2d 352, 353-54 (Fla.1979). Similarly, it is contrary to the principle recognized in Murthy v. N. Sinha Corp., 644 So.2d 983, 985 (Fla.1994), where this Court unanimously agreed that "legislative intent . . . should be the primary factor considered by a court in determining whether a cause of action exists when a statute does not expressly provide for one." (Emphasis added.) It is also contrary to the evolution in tort law that has been recognized by the Restatement (Second) of Torts since 1979, when the authors adopted section 874A (Tort Liability for Violation of Legislative Provision) to supplement the approach previously suggested by section 286 of the Restatement *217 (Second) of Torts (1965). See Restatement (Second) of Torts § 874A cmt. d (1979) ("If the court has reached the conclusion that the legislative body did actually have the intent either to establish a civil remedy to protect and enforce the right or to limit the relief to that expressly provided for in the legislative provision, the issue is settled, and the court is warranted in declaring that it is complying with the legislative intent.").
Raisen, Murthy, and section 874A of the Restatement recognized a fundamental, general principle: (1) if the Legislature expressly provides remedies for the breach of a new duty it imposes (and a private remedy is not included among these remedies), and (2) there is no indication that the Legislature intends to change the common law by providing a private remedy for a breach of that duty, the courts should not modify the common law in order to create a remedy. In other words, except in very unique cases, the courts should accept the Legislature's express choice of remedies for the breach of a duty it created and not modify the common law to create an additional remedy.
As stated earlier, while the courts certainly have the discretion to add a private remedy to the remedies provided by the Legislature, they "must be careful to exercise that discretion cautiously and soundly." Restatement (Second) of Torts § 874A cmt. d (1979). It must be exercised cautiously in order to preserve the important boundary between judicial and legislative powers.[10] And the thorough examination of legislative intent ensures that the court exercises its judicial powers cautiously and soundly.
Section 874A of the Restatement (Second) of Torts suggests a meaningful method for thoroughly examining legislative intent. Under this method, the court initially considers whether the Legislature intended to create a private civil remedy or to modify the common law in order to provide a private remedy in tort. Restatement (Second) of Torts § 874A cmt. c (1979). If the court finds the legislature never contemplated the issue of a private civil remedy, "the primary test for determining whether the courts should provide a tort remedy for violation of the legislative provision is whether this remedy is consistent with the legislative provision, appropriate for promoting its policy and needed to assure its effectiveness." Restatement (Second) of Torts § 874A cmt. h (1979). Using this Restatement method of examining legislative intent, I will establish *218 that there is no basis to add to the remedies the Legislature expressly provided for when it developed Florida's strategy to confront the HIV/AIDS public health crisis and, as part of that strategy, created the duty of confidentiality for HIV testing.

C. Legislative Intent of Section 381.004
The language of section 381.004 does not manifest any intent to create a private claim in negligence. See DeGregorio v. Balkwill, 853 So.2d 371, 373 (Fla.2003) ("Legislative intent is determined primarily from the statute's language.") (citing Hayes v. State, 750 So.2d 1, 3 (Fla.1999)). If the duty of confidentiality created in section 381.004(3)(f) is breached, the individual offender is to be sanctioned administratively or punished criminally as provided by section 381.004(6). Section 381.004(6) provides:
(6) PENALTIES. 
(a) Any violation of this section by a facility or licensed health care provider shall be a ground for disciplinary action contained in the facility's or professional's respective licensing chapter.
(b) Any person who violates the confidentiality provisions of this section and s. 951.27 commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.
§ 381.004(6), Fla. Stat. (1996 Supp.). Nothing in this statute suggests that the Legislature intended to create a private remedy in tort, much less that the courts should create a brand new tort for the negligent disclosure of testing results based on this statute.
Additionally, nowhere in the legislative history of this act is there any indication that the Legislature ever intended to provide a private remedy or alter the common law rule that a recoverable breach of confidentiality must be intentional.[11] The Legislature has amended this statute numerous times since its inception. Two of these amendments specifically address persons who could be prosecuted under this statute and the penalties available. See ch. 89-350, § 6, at 2242, Laws of Fla.; ch. 96-179, § 1, at 448, Laws of Fla. In 1989, the Legislature revised section 381.609(6)(a), which was renumbered in 1991 to 381.004(6)(a), to apply to health care facilities in addition to health care providers. Ch. 89-350, § 6, at 2242, Laws of Fla.; ch. 91-297, § 17, at 2841, Laws of Fla. In 1996, persons who negligently violate the statute were included in the list of those guilty of a misdemeanor. Ch. 96-179, § 1, at 448, Laws of Fla. (omitting "intentionally"). Thus, there is absolutely no indication in either the language of the statute or in the legislative history that the Legislature intended to create a private civil remedy.[12]
*219 However, under the Restatement method of analyzing legislative intent, the court could find that the Legislature "had no specific intent in fact on the issue" of whether to create a private civil remedy. Restatement (Second) of Torts § 874A cmt. d (1979). While the language of section 381.004 does not provide for the creation of a private civil remedy, the language also does not expressly reject the possibility either. The same is true of the statute's legislative history. Therefore, because the Legislature did not express an intention to either create or reject a private civil remedy, the court could conclude that the Legislature simply did not consider a private right to sue. Since there is no evidence that the Legislature considered the issue of whether to create a private civil remedy, "the question of what it should do still remains before the court." Id.
In determining whether it would be appropriate to create a private remedy, a court should look at "[t]he nature of the legislative provision," "[t]he significance of the purpose that the legislative body is seeking to effectuate," "[t]he adequacy of existing remedies," and "[t]he extent to which the tort action will aid or supplement or interfere with, existing remedies and other means of enforcement." Restatement (Second) of Torts § 874A cmt. h (1979).[13] An examination of these factors in this case leads to the conclusion that no basis exists for the court to create a private civil remedy for the breach of confidentiality created in section 381.004.
(i) The Nature of Section 381.004[14]
The nature of section 381.004 does not provide a basis for the judiciary to create an additional remedy. The statute is very specific in its regulation of conduct, clearly delineating what actions are prohibited. Section 381.004(3)(f) provides:
No person who has obtained or has knowledge of [an HIV] test result pursuant to this section may disclose or be compelled to disclose the identity of any person upon whom a test is performed, or the results of such a test in a manner which permits identification of the subject of the test. . . .
This provision very clearly prohibits the disclosure of HIV test results or the identity of any person who receives an HIV test. In other words, section 381.004 imposes a strict duty of confidentiality on individuals who have knowledge of HIV testing. The statute does not employ broad general terms that would only acquire specific meaning after the court supplies a remedy for the benefit of individuals receiving HIV tests. Thus, court action is not required to give the statute or the duty the statute creates specific meaning.
(ii) The Purpose of Section 381.004
Moreover, the Legislature's purpose in enacting section 381.004 does not lend itself to the judicial creation of a private civil remedy. The Florida Legislature was *220 addressing a public health issue when it created the duty of confidentiality for HIV testing. Section 381.004(1) provides:
The Legislature finds that the use of tests designed to reveal a condition indicative of human immunodeficiency virus infection can be a valuable tool in protecting public health. The Legislature finds that despite existing laws, regulations, and professional standards which require or promote the informed, voluntary, and confidential use of tests designed to reveal human immunodeficiency virus infections, many members of the public are deterred from seeking such testing because they misunderstand the nature of the test or fear that tests results will be disclosed without their consent. The Legislature finds that the public health will be served by facilitating informed, voluntary, and confidential use of tests designed to detect human immunodeficiency virus infection.
The Legislature was looking for ways to encourage HIV testing as a means of protecting public health. The Legislature was not seeking to remedy private harms suffered by specific individuals through the use of monetary damages. From the statement of its purpose in enacting section 381.004, it is clear that the Legislature did not intend to create a private tort remedy, much less that the courts would subsequently create a brand new tort for the negligent disclosure of testing results based on this statute.
(iii) Adequacy of Existing Remedies
Further, the remedies provided by section 381.004 seem sufficient to effectuate the Legislature's purpose of facilitating HIV testing for the protection of public health. As stated previously, if the duty of confidentiality created in section 381.004(3)(f) is breached, the individual offender is to be sanctioned administratively or punished criminally as provided by section 381.004(6). I find no basis to conclude that these penalties are insufficient to ensure the confidentiality necessary to encourage HIV testing. Nor do I find any basis to conclude that a private civil remedy would be a more efficacious deterrent for negligent breaches than facing the possibility of losing one's professional license and livelihood as well as the possibility of criminal charges. Disturbingly, the majority completely ignores this fundamental issue. Nowhere does it explain how the creation of a new tort action will ensure greater compliance with the statutory duty of confidentiality. Therefore, absent any reason to believe that the express statutory remedies as well as the preexisting common law remedies are insufficient to meet the Legislature's purpose, this Court should not create a new, additional remedy for which the Legislature itself did not expressly provide.
To summarize, the Florida Legislature was addressing a public health issue when it created the duty of confidentiality for HIV testing. It was looking for ways to encourage HIV testing. In creating this very specific duty, unlike in Gracey, the Legislature did not create gapfilling authority for the courts to create new remedies. Instead, it selected both administrative and criminal remedies for breaches of this duty. In making this selection, it did not provide for a private action in negligence, and none existed at the time the statute was enacted. Moreover, the existing remedies seem sufficient to accomplish the Legislature's purpose. Given these facts, I respectfully believe that the majority opinion is an abuse of this Court's discretionary authority to fill any perceived remedial gap by creating a new private remedy.

D. Distinguishing Gracey

Finally, this case is clearly distinguishable from Gracey, 837 So.2d 348. In Gracey, *221 this Court made an exception to the impact rule for a complaint alleging negligent infliction of emotional injuries resulting from a psychotherapist's breach of his statutorily created duty of confidentiality. Id. at 351. To reach its ultimate holding, the Court had to infer a private cause of action for the breach of the duty of confidentiality created by section 491.0147, Florida Statutes (1997). Id. Unfortunately, the Gracey decision did not apply the analysis I discuss above. However, if the Court had applied this analysis, inferring a private cause of action using a recognized tort would have been justifiable.
More particularly, Gracey is distinguishable from Abril for four reasons. First, in Gracey, the Court provided a private cause of action for the breach of a statutory duty using a preexisting tort rather than creating an entirely new cause of action. Second, unlike the statute in Gracey, section 381.004 was enacted as a comprehensive effort to address a critical public health crisis. Third, unlike section 381.004, the statute in Gracey provided no remedy or sanction for a breach of the duty of confidentiality it imposed. Indeed, the Gracey opinion emphasized this fact. In light of the complete failure of that statute to provide a remedy for the duty created, it was appropriate for this Court to thoughtfully consider whether to infer that the Legislature would intend a private cause of action. See generally Restatement (Second) of Torts § 874A (1979).[15]
Fourth, Gracey is distinguishable because the common law tort that arose from the breach of the duty of confidentiality under chapter 491 was a claim for breach of a fiduciary duty. 837 So.2d at 357. This difference in the nature of the duty owed is significant, especially as it relates to the certified question about the impact rule.[16] The Abrils have not claimed the existence of a fiduciary duty. It is one thing to permit damages for emotional disturbances caused by a psychotherapist's breach of a "very special psychotherapist-patient confidential relationship." Gracey, 837 So.2d at 352. It is quite another to permit the same type of relief for the breach of a nonfiduciary, ordinary duty of care.

Conclusion
Respectfully, as I have outlined in this dissent, the majority opinion in this case is, at best, unfortunate. The question it answers is not supported by the record. The *222 answer given is much broader than necessary for the medical malpractice claim pled. And, as I have attempted to explain, adding to the statutory remedies by modifying or abrogating the common law without any meaningful consideration of legislative intent violates the Restatement and the precedent of this Court that recognizes the judiciary's limited policymaking role in our form of government. Increasingly complex state legislation, coupled with the social cost of a much higher volume of litigation, strongly supports the desirability of a careful judicial scrutiny of legislative intent. In this light, if properly analyzed, the Abrils do not have a common law cause of action for a negligent breach of confidentiality or negligent invasion of privacy. The Abrils have failed to establish, and the Second District as well as the majority have failed to identify, any legislative intent that would support adding this new common law remedy to the statutory remedies already provided. Given the above, I would quash the district court's decision. Therefore, I dissent.
WELLS, J., concurs.
NOTES
[1] According to one of the Abrils' exhibits, Ms. Abril is suffering from and undergoing treatment for severe depression and posttraumatic stress disorder as a result of the laboratory's negligence.
[2] The complaint alleged that the department was liable for the laboratory's negligence pursuant to section 768.28(10)(a), Florida Statutes (Supp.1996), which states:

Health care providers or vendors, or any of their employees or agents, that have contractually agreed to act as agents of the Department of Corrections to provide health care services to inmates of the state correctional system shall be considered agents of the . . . Department . . . for the purposes of . . . section [768.28, Florida's sovereign immunity waiver statute], while acting within the scope of and pursuant to guidelines established in said contract or by rule.
The Second District noted that the department made no argument disputing its responsibility under this statute, and it has raised no such argument in this appeal. Abril, 884 So.2d at 212 n. 3.
[3] As earlier noted, the Abrils broadly alleged that Continental breached its common law duty to act as a reasonably professional laboratory in like circumstances. Abril, 884 So.2d at 208. In fact, although not directly pertinent to the legal issue before us, the Abrils presented affidavits in the trial court from various medical and research professionals, stating their opinion that the laboratory breached its professional duties in not properly disseminating the results of the HIV test results.
[4] Our decision in Humana involved a claim for misdiagnosis of HIV/AIDS, and did not involve a claim for breach of confidentiality or unlawful dissemination of confidential information.
[5] Unlike Justice Cantero, I am unable to accept the majority's characterization of its holding as establishing that a violation of section 381.004 is merely "evidence of negligence" in an ordinary negligence case. Instead, I read the majority's opinion as replacing the reasonable person standard with the specific statutory duty not to disclose HIV testing results under section 381.004. The majority opinion expressly states that "[s]ection 381.004(3)(f), at a minimum, creates a reasonable standard of care for handling HIV testing results." Majority op. at 205. And, when a court replaces the reasonable person standard with a specific statutory duty, the result is negligence per se. See generally Restatement (Second) of Torts § 288B (1965) (discussing effect of violation of statute in common law negligence actions and distinguishing "negligence per se" from "evidence of negligence"); Prosser and Keeton on the Law of Torts § 36 (W. Page Keeton, et al. eds., 5th ed.1984) (same).
[6] In footnote 3 of their Amended Answer Brief, the Abrils explain that "[t]he initial Complaint alleged a violation of Section 381.004. The First Amended Complaint alleges a violation of prevailing professional standards. The only reference to Section 381.004 violations are in some of the expert witness opinions which will not be relied upon in Respondents' cause of action."
[7] In Kush, this Court addressed the following certified question of great importance in a medical malpractice case: "In a case involving negligent failure to diagnose an inheritable genetic impairment, is the resulting cause of action for wrongful birth extinguished by the four-year statute of repose if the genetically impaired child is born more than four years after the negligent diagnosis?" Id. at 415.
[8] Specifically, the Second District stated:

The complaint filed by the Abrils alleges facts that would be sufficient to establish that Continental Laboratory violated a duty imposed on it by section 381.004 to maintain the confidentiality of HIV test results and to disclose those results only as authorized by law. The issue presented for resolution thus is not whether the complaint's allegations are sufficient to establish the necessary elements of the existence of a duty and the breach of that duty. The dispositive question is whether the damages alleged  for mental anguish and emotional distress caused by Continental Laboratory's breach of its duty  are cognizable under Florida law. The answer to this question depends on whether the impact rule is applicable to the claims at issue.
Abril, 884 So.2d at 209-10.
[9] This same reasoning led Sir Edward Coke in 1642 to remark that "[e]very Act of Parliament made against any injury, mischiefe, or grievance doth either expressly, or impliedly give a remedy to the party wronged or grieved [by any violation of Act]." H. Miles Foy, III, Some Reflections on Legislation, Adjudication, and Implied Private Actions in the State and Federal Courts, 71 Cornell L.Rev. 501, 524 (1986) (quoting Edward Coke, Second Part of the Institutes of the Laws of England 55 (1642)). Coke's reasoning was rejected by the judiciary in this country beginning in the middle of the nineteenth century. Id.
[10] As then Professor Easterbrook explained, the "judicial pursuit of the `values' or aims of legislation is a sure way of defeating the original legislative plan":

A legislature that seeks to achieve Goal X can do so in one of two ways. First, it can identify the goal and instruct courts or agencies to design rules to achieve the goal. In that event, the subsequent selection of rules implements the actual legislative decision, even if the rules are not what the legislature would have selected itself. The second approach is for the legislature to pick the rules. It pursues Goal X by Rule Y. The selection of Y is a measure of what Goal X was worth to the legislature, of how best to achieve X, and of where to stop in pursuit of X. Like any other rule, Y is bound to be imprecise, to be over- and under-inclusive. This is not a good reason for a court, observing the inevitable imprecision, to add to or subtract from Rule Y on the argument that, by doing so, it can get more of Goal X. The judicial selection of means to pursue X displaces and directly overrides the legislative selection of ways to obtain X. It denies to legislatures the choice of creating or withholding gapfilling authority. The way to preserve the initial choice is for judges to put the statute down once it becomes clear that the legislature has selected rules as well as identified goals.
Frank H. Easterbrook, Statutes' Domains, 50 U. Chi. L.Rev. 533, 546-47 (1983) (footnotes omitted).
[11] I am not necessarily endorsing the examination of legislative history in this case. I believe such an approach is rarely an effective tool in gleaning the true intent of the Legislature. See American Home Assur. Co. v. Plaza Materials Corp., 908 So.2d 360, 375-76 (Fla. 2005) (Cantero, J., concurring in part and dissenting in part) (discussing why legislative history, in particular staff analysis, is not determinative of legislative intent); see also Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931) ("When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.")). However, an examination of legislative history is consistent with the analysis suggested in the Restatement. Restatement (Second) of Torts § 874A (1979).
[12] Based on the Murthy analysis, this Court's inquiry should stop at this point. Where there is no basis to conclude that the Legislature intended that there be a private remedy under the facts alleged, the duty created by the statute should not be used by this Court to create one.
[13] The Restatement also suggests that the court consider "[t]he extent of the change in tort law," a factor I discussed previously. Restatement (Second) of Torts § 874A cmt. h (1979). Additionally, the Restatement states that the court could consider "[t]he burden that the new cause of action will place on the judicial machinery." Id.
[14] Under this factor, the Restatement suggests the court consider the specificity of "the legislative provision in its regulation of conduct" and whether the provision is "posed in broad, general terms that will acquire specific meaning only if  and after  the court has determined to supply the tort remedy. . . ." Id.
[15] For example, the Restatement discusses a relevant maxim of statutory construction, ubi ius ibi remedium, which suggests that "if the legislation created a right it must have been intended to create an adequate remedy to enforce that right." Restatement (Second) of Torts § 874A cmt. c (1979).
[16] In Gracey, this Court recognized that "the plaintiffs have presented a cognizable claim for recovery of emotional damages under the theory that there has been a breach of fiduciary duty arising from the very special psychotherapist-patient confidential relationship recognized and created under section 491.0147 of the Florida Statutes." Id. at 352 (emphasis added). This Court then explained the nature of a fiduciary relationship, stating that "[i]f a relation of trust and confidence exists between the parties (that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused), that is sufficient as a predicate for relief. The origin of the confidence is immaterial." Id. (quoting Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 421 (1927)). The nature of the duty in an ordinary negligence action does not require a special relationship of confidence between the plaintiff and the defendant. Rather, the duty is an "obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks." Clay Elec. Coop., Inc. v. Johnson, 873 So.2d 1182, 1185 (Fla.2003) (quoting Prosser and Keaton on the Law of Torts 164-65 (W. Page Keeton, et al. eds., 5th ed.1984)) (emphasis added).