*Goney v. SuttonPark Cap. LLC*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of November, two thousand twenty-three.

PRESENT:

JOHN M. WALKER, JR.,
REENA RAGGI,
RICHARD J. SULLIVAN,
  *Circuit Judges*.

———————————————————————

RODNEY GONEY, LORI GONEY, T.N., through his Power of Attorney,

   *Plaintiffs-Appellants*,

  v.              No. 22-1830

SUTTONPARK CAPITAL LLC, SUTTONPARK STRUCTURED SETTLEMENTS LLC, EDWARD STONE,

   *Defendants-Appellees*.

———————————————————————

| | |
|---|---|
| **For Plaintiffs-Appellants:** | FARVA JAFRI, Jafri Law Firm, Armonk, NY. |
| **For Defendants-Appellees SuttonPark Capital LLC and SuttonPark Structured Settlements LLC:** | JOHN C. GEKAS (Jennifer L. Beidel, Stephanie L. Denker, Christie R. McGuinness, Saul Ewing LLP, New York, NY, *on the brief*), Saul Ewing LLP, Chicago, IL. |
| **For Defendant-Appellee Edward Stone:** | ANTHONY J. PROSCIA (Brett A. Scher, *on the brief*), Kaufman Dolowich Voluck, LLP, Woodbury, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the July 26, 2022 judgment of the district court is **AFFIRMED** in part and **VACATED** in part and the case is **REMANDED** to the district court for further proceedings consistent with this order.

Following an earlier appeal of the district court's judgment of dismissal, which resulted in this Court's remand of the case for consideration of amendment of the complaint, *see Goney v. SuttonPark Cap. LLC*, No. 21-188, 2021 WL 5071867 (2d Cir. Nov. 2, 2021), Rodney and Lori Goney (the "Goneys"), along with their minor grandson T.N., appeal the judgment of the district court denying their

2

motion for leave to amend their complaint against SuttonPark Capital LLC, SuttonPark Structured Settlements LLC (together, "SuttonPark"), and attorney Edward Stone. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

Although "[w]e generally review a district court's denial of leave to amend for abuse of discretion," *Thea v. Kleinhandler*, 807 F.3d 492, 496 (2d Cir. 2015), we review such a denial *de novo* when the district court denies leave to amend based on the resolution of legal issues, *see Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011). Here, because the district court denied the Goneys' motion on the ground that their proposed amendments would be futile, we review *de novo* whether the proposed amendments would state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Thea*, 807 F.3d at 496–97. To meet that pleading bar, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## I.  RICO Claims

In denying leave to amend, the district court found that the Goneys'

proposed amended complaint ("PAC") failed to state a claim under the private right of action in the Racketeering Influenced and Corrupt Organizations ("RICO") Act of 1970, 18 U.S.C. § 1964(c). As relevant here, RICO imposes two limits on which injuries can be redressed through its private right of action. First, RICO permits suit only for "economic injur[ies]"; it does not allow recovery for "personal injuries" such as bodily harm or emotional distress. *See Bascuñán v. Elsaca*, 874 F.3d 806, 817 (2d Cir. 2017). Second, even when a plaintiff identifies an economic injury, he must show that the defendant's conduct was the "proximate cause" of that harm. *See Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992).[1]

Plaintiffs have identified no injury that satisfies both requirements. With respect to T.N. – the Goneys' minor grandson for whom Rodney Goney has power of attorney – Plaintiffs claim that he was harmed because he witnessed SuttonPark

---

[1] The parties frame these inquiries as part of *constitutional* standing under Rule 12(b)(1), but that is not correct. Whether a plaintiff satisfies RICO's injury requirements bears on whether the RICO claim survives a motion to dismiss under Rule 12(b)(6), not whether the court has subject matter jurisdiction under Rule 12(b)(1). *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 129 (2d Cir. 2003); *see also Am. Psych. Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) ("The Supreme Court has . . . clarified . . . that what has been called 'statutory standing' in fact is not a [constitutional] standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under [Rule 12(b)(6)].'" (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014))).

4

exploit his mother Lyndsy, the Goneys' adult daughter, by abusing her sexually, pressuring her to take drugs, and thereby rendering her incapable of caring for him. *See* App'x at 64 (PAC ¶ 65). But the PAC alleges that T.N. suffered only "severe emotional distress and trauma," a noncognizable personal injury under RICO. *Id.* The same is true for the Goneys' allegation that SuttonPark "solicited" their murder, App'x at 73 (PAC ¶ 97), which the Goneys do not even attempt to tie to an economic harm.

The Goneys also insist that SuttonPark harmed them financially because they had to support Lyndsy and T.N. after SuttonPark strongarmed Lyndsy into signing over her annuity. *See* App'x at 60, 65 (PAC ¶¶ 54, 70.) But even if that harm were "economic," *Bascuñán*, 874 F.3d at 817, it fails RICO's proximate cause requirement. Indeed, RICO allows only the "direct victim" of the racketeering activity to recover. *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10, 12 (2010). Thus, "a plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover." *Holmes*, 503 U.S. at 268–69. To that end, "plaintiffs who are obligated to pay the medical expenses of another may not recover against the tortfeasor who caused the damage, because their injuries are

5

indirect since they derive wholly from the injuries sustained by the third party."

*Laborers Loc. 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 237 (2d Cir. 1999). The harms the Goneys allege are clearly indirect. They complain of harm that befell Lyndsy – the direct victim – due to SuttonPark's misconduct and maintain that they must pay to support Lyndsy. But Lyndsy is not a minor and the Goneys have no legal responsibility to support her. Though the Goneys' choice to do so may be understandable, their derivative claims of injury flowing from that voluntary support cannot satisfy RICO's proximate cause requirement.

## II. Malpractice Claims

Beyond RICO, the Goneys also maintain that Edward Stone, their former attorney, committed legal malpractice by "collud[ing]" with Fred Love – SuttonPark's general counsel – to delay and derail their legal claims.[2] Goney Br. at 38. We note as an initial matter that the Goneys failed to specify which state's malpractice law should apply: Connecticut (where Stone lives and is licensed to practice) or New York (where he is also licensed and maintains an office). In any event, to survive a motion to dismiss on a collusion theory, plaintiffs must offer

---

[2] There is no dispute that the PAC adequately alleges diversity jurisdiction over these claims under 28 U.S.C. § 1332, as the PAC alleges that the Goneys and Stone are citizens of different states (Pennsylvania and Connecticut) and that the amount in controversy exceeds $75,000. *See* App'x at 53–54 (PAC ¶ 29).

6

more than "a conclusory allegation of agreement at some unidentified point." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).[3]   Here, the Goneys allege only that Stone and Love were friendly from prior business dealings, that Love had referred unspecified "business" to Stone in the past, and that "Stone promised Love (without authorization from [the Goneys])" that he would not sue SuttonPark and "was only interested in settling."   App'x at 68–69 (PAC ¶ 79, 82). The bare allegation that Stone and Love were friendly is not enough to support a plausible inference of collusion.   *See Twombly*, 550 U.S. at 555 ("The pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action." (alterations and internal quotation marks omitted)).   Moreover, the only prior business dealing of which the Goneys complain was an acquisition where Stone represented a party *adverse* to Love and SuttonPark.   App'x at 68 (PAC ¶ 79).   Finally, the fact that an attorney told opposing counsel – during settlement negotiations and with the client present –

---

[3] The Goneys' opening brief raises only this collusion theory of malpractice and not other theories that they asserted below, including misappropriation of funds and negligence separate from collusion based on failing to bring lawsuits and missing statutes of limitations.   Because the Goneys raised those theories only in their reply brief, they have abandoned those arguments on appeal.   *See JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005).

7

that he wanted to settle without bringing suit is far too innocuous to plausibly constitute collusion.[4]

### III.   T.N.'s Tort Claims

Finally, T.N. – through his attorney-in-fact, Rodney Goney – brings claims for negligence, gross negligence, and false imprisonment against SuttonPark, alleging he was injured when SuttonPark incapacitated and sexually abused Lyndsy in T.N.'s presence and confined him against his will.[5]   The district court rejected T.N.'s amendments as futile, concluding that "Lyndsy gave up her claims against SuttonPark" when she agreed to sign over her annuity in exchange for lump sum payments, thereby extinguishing T.N.'s claims as well.   Sp. App'x at 2

We disagree with that conclusion because nothing suggests that Lyndsy released T.N.'s legal claims as part of her settlements with SuttonPark, which do not mention T.N.'s claims.   Indeed, "[t]he claims of . . . minor children" are separate from the legal claims possessed by their guardians.   *See Rivers v. McLeod*,

---

[4] As part of their collusion argument, the Goneys also invoke for the first time New York's attorney misconduct statute.   *See* Goney Br. at 39–40 (citing N.Y. Jud. Law § 487).   We need not consider whether the Goneys abandoned a claim based on that statute because it too requires the sort of collusion or willful misconduct that the Goneys have failed to allege in their pleading.

[5] Here, too, the PAC does not indicate which state's substantive law should apply, nor did the district court address the issue when it took up the Goneys' claims.   *See Md. Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 151 (2d Cir. 2003) ("A federal court sitting in diversity applies the choice-of-law rules of the forum state.").

8

252 F.3d 99, 102 (2d Cir. 2001). That Lyndsy agreed to release her own claims against SuttonPark does not mean that she released T.N.'s legal claims too. Moreover, it does not appear that Lyndsy could have released T.N.'s legal claims through her settlements, because Florida law – which governed her various settlements with SuttonPark, *see* Supp. App'x at 162; Dist. Ct. Doc. No. 18-1 at 5 – generally requires "court authorization" before a guardian can settle a minor's pre-suit legal claims. *See Glob. Travel Mktg., Inc. v. Shea*, 908 So. 2d 392, 400 (Fla. 2005) (citing Fla. Stat. § 744.387(1)). Neither the Florida court's 2016 approval of Lyndsy's transfer of her annuity nor Lyndsy's 2018 settlement with SuttonPark makes any mention of claims by T.N.

Because the district court erred when it denied T.N. leave to amend his tort claims on grounds of futility, we must vacate the judgment as to that ruling and remand for further proceedings. However, our instructions on remand cannot end there, because it is now unclear whether the district court would have jurisdiction to hear T.N.'s claims on the merits.

The PAC alleges that T.N's claims – arising under state tort law – are supported by both diversity and supplemental jurisdiction. But the PAC does not adequately allege the presence of diversity jurisdiction under 28 U.S.C. § 1332

9

because it fails to identify the citizenship of either of the SuttonPark defendants, which are LLCs. *See* App'x at 43. To properly invoke diversity jurisdiction, a complaint must allege the specific "citizenship" of each of the parties. *Jacobs v. Patent Enf't Fund, Inc.*, 230 F.3d 565, 567 (2d Cir. 2000). But as we pointed out at oral argument, LLCs like the two SuttonPark defendants "take[] the citizenship of each of its *members*." *Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012) (emphasis added). Here, the PAC does not specify the citizenship of each member of SuttonPark Capital LLC and SuttonPark Structured Settlements LLC, *see* App'x at 53 (PAC ¶ 29), and Plaintiffs' counsel conceded as much during oral argument, *see* Oral Arg. at 13:20. Lacking that information, the PAC is "deficient" and cannot support diversity jurisdiction over the state-law tort claims. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016).

That leaves supplemental jurisdiction under 28 U.S.C. § 1367 as the last jurisdictional resort for T.N.'s tort claims on remand. But that avenue, too, raises a potential pitfall: when "all federal-law claims are eliminated before trial," the district court should typically "declin[e] to exercise jurisdiction over the remaining state[-]law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Here, the only claims with independent federal jurisdiction – the RICO and

10

malpractice claims – have been dismissed, casting doubt on whether the district court can properly retain T.N.'s state-law tort claims on remand.

In light of this changed landscape, we direct the district court on remand to first ascertain whether it has jurisdiction to hear T.N.'s state-law claims. *See Motorola Cred. Corp. v. Uzan*, 322 F.3d 130, 137 (2d Cir. 2003) (remanding for the district court to decide whether to exercise supplemental jurisdiction after RICO claims dismissed); *Young-Gibson v. Patel*, 476 F. App'x 482, 483 (2d Cir. 2012) (same for defective allegations of diversity jurisdiction). With respect to diversity jurisdiction, the district court shall consider, in the first instance, whether to grant leave to amend to correct deficient jurisdictional pleadings under 28 U.S.C. § 1653. *See Motorola*, 322 F.3d at 137 n.4. As usual, that leave should "be freely permitted" and should generally be denied only when "the record clearly indicates that the complaint could not be saved by any truthful amendment." *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 55 (2d Cir. 2019) (internal quotations omitted).

The district court may also decide whether to exercise supplemental jurisdiction over T.N.'s state-law claims under the rubric of section 1367, especially in light of the dismissal of the claims with independent federal jurisdiction. *See* 28 U.S.C. § 1367(c)(3). To be sure, there may be instances where a district court

11

may retain jurisdiction over state-law claims after the federal anchor claim is dismissed, such as when "discovery ha[s] been completed," "dispositive motions" have been decided, and the case is "ready for trial." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003). But when the federal claims are dismissed at earlier stages, "we have concluded that the exercise of supplemental . . . jurisdiction was an abuse of discretion." *Id.* Moreover, "we have repeatedly held that a district court particularly abuses its discretion when it retains jurisdiction over state-law claims raising unsettled questions of law following dismissal of all original-jurisdiction claims." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 124 (2d Cir. 2006); *see* 28 U.S.C. § 1367(c)(1). On remand, the district court may find that such unsettled questions are present here, given the uncertainty around whether New York or Florida law governs T.N.'s state-law claims and whether a minor like T.N. can state a claim for false imprisonment if he was with his custodial guardian whom the defendant nevertheless allegedly incapacitated and rendered unable to care for him. *See, e.g.*, *People v. Leonard*, 19 N.Y.3d 323, 328 (2012) (explaining that, in both Florida and New York, "there comes a point where even a custodial parent's control over a child's movements is

12

unlawful"). Should the district court confirm that federal jurisdiction exists, then it may take up T.N.'s claims on the merits.[6]

For the reasons given above, we **AFFIRM** the judgment of the district court as to the RICO and malpractice claims, **VACATE** the judgment as to T.N.'s state-law tort claims, and **REMAND** the case to the district court for further proceedings consistent with this order. In the interest of judicial economy, any reinstated appeal shall be assigned to this panel pursuant to *United States v. Jacobson*, 15 F.3d 19, 21–22 (2d Cir. 1994). Either party may restore jurisdiction to this Court within thirty days of the entry of a final order by letter to the Clerk's Office (attaching a copy of the relevant order) advising the Clerk that the appeal should be reinstated. In that event, no new notice of appeal or additional filing fee will be required.

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk of Court

---

[6] Of course, even if there is federal jurisdiction, the district court may still conclude that T.N.'s allegations in the PAC fail to state a claim. *See, e.g.*, *A.M.P. v. Benjamin*, 158 N.Y.S.3d 337, 342 (3d Dep't 2021) (explaining that negligence claims premised on purely emotional harm must allege "particularized allegations" of a threat to "physical safety"); *G4S Secure Sols. USA, Inc. v. Golzar*, 208 So.3d 204, 208 (Fla. Dist. Ct. App. 2016) (explaining how Florida's "impact rule" forecloses many claims that are predicated on emotional injuries).